THE STATE *ex rel*. MERRIAM, *Petitioner*, v. ROSS, *Judge, et al.*

In Banc, June 4, 1894.

1. **Receiver.** A receiver is an indifferent person appointed to receive and protect the property or fund in litigation *pendente lite*.

2. ———. The appointment is not the ultimate end and object of the suit, but is merely a provisional remedy or auxiliary proceeding and there must be a pending suit.

3. ———: INSOLVENT CORPORATION: PENDING SUIT. A petition by an insolvent corporation for the appointment of a receiver to manage and conduct its business so that its creditors can not enforce their rights against it in the courts does not state a cause of action either at law or in equity in which as incident thereto a receiver may be appointed, and such appointment when made is subject to collateral attack.

4. ———: RAILROAD: EQUITABLE ACTION IN REM. A bondholder's petition in his own behalf and in that of all others similarly situated to enforce a railroad company's contract that, on default of payment of interest on the bonds, the trustee may take possession of the property and apply the income to pay the interest is an equitable action *in rem* in which a receiver can be appointed.

5. ———: ———: ———: PROHIBITION. Where, in the foregoing action, a receiver has been appointed, the petitioner is entitled to a writ of prohibition against interference by another court and by its receiver appointed without jurisdiction.

6. ———: ———: ———: ———. The prohibition will not be denied for irregularities occurring in the exercise of the jurisdiction of the former court.

7. ———: ———: ———: ———. Nor on the ground that the bondholder brought his suit maliciously.

8. **Supreme Court:** PROHIBITION: CONFLICT OF JURISDICTION. Prohibition from the supreme court is appropriate to restrain an inferior court's unlawful exercise of jurisdiction over subject-matter of which

jurisdiction has been properly acquired by another court, especially in view of imminent possibility of physical conflict for possession between the officers of the two courts.

*Prohibition.*

WRIT AWARDED.

*H. S. Priest* for relator.

(1) Prohition is the proper method by which to determine the priority of jurisdiction as between courts of common jurisdiction. *Thomas v. Mead*, 36 Mo. 232; *Trainer v. Porter*, 45 Mo. 336; *Ex parte Smith*, 23 Ala. 94; *Henry v. Steele*, 28 Ark. 455; *State v. Allen*, 45 Mo. App. 551. (2) The circuit court of Stoddard county was the first to take cognizance of the controversy, not only because the petition of Merriam was first filed there, but also because it first asserted dominion over the property of the railway by the appointment of a receiver, directing him forthwith to seize the property. *First.* As to jurisdiction by filing of petition with clerk, as between parties to the suit. *Lumber Co. v. Wright*, 21 S. W. Rep. 811; *Gordon v. Taylor*, 53 Mich. 629; Wade on Notice, sec. 348; *Maddox v. Humphries*, 30 Tex. 494; *Lyle v. Bradford*, 7 T. B. Mon. 111–116; *Seaver v. Lincoln*, 21 Pick. 269; *Co. v. Holleman*, 27 Pac. Rep. 413, 414. *Second.* As to jurisdiction by cognizance of the controversy. *Union Trust Co. v. Railroad*, 6 Biss., 198; *Gaylord v. Railroad*, 6 Biss. 290; *Judd v. Railroad*, 24 Blatch. 420; *Young v. Rollins*, 85 N. C. 488; *Heidritter v. Oil Cloth Co.*, 112 U. S. 294; *Cooper v. Reynolds*, 10 Wall. 308–317; *Barton v. Barbour*, 104 U. S. 126; *French v. Hay*, 22 Wall. 250; *Taylor v. Carroll*, 20 How. 583–591; *Hagan v. Lucas*, 10 Peters, 400; *Maynard v. Bond*, 67 Mo. 315; High on Receivers [2 Ed.], sec. 50, and authorities cited; Gluck & Becker on Receivers, sec. 30, p. 66; Beach on Receivers, sec. 20, p. 21. (3) Neither the original nor the amended bill, filed in the Cape

Girardeau court of common pleas, contained any matter of which a court, either of law or equity, could have or entertain jurisdiction. *Jones v. Bank,* 10 Col. 473; *French Bank Case,* 53 Cal. 495; *Smith v. Superior Court,* 32 Pac. Rep. (Col.) 322; *Trust Co. v. Railroad,* 29 Fed. Rep. 416; *High v. McRea,* Chase's Decs. 466; *Kimball v. Goodburn,* 32 Mich. 12; *Bangs v. McIntosh,* 23 Barb. 599; *Att'y Gen. v. Bank,* 1 Hop. 354; *Att'y Gen. v. Ins. Co.,* 2 Johns. Ch. 271; *Neal v. Hill,* 16 Cal. 145; *Port Huron v. Judge,* 31 Mich. 456; Wait on Insolv. Corp., sec. 183; *Gregory v. Gregory,* 1 Jones & Spencer, 39; *French v. Gifford,* 30 Iowa, 148; *Att'y Gen. v. Earl of Clarendon,* 17 Vesey, 491; *Baker v. Backus,* 32 Ill. 80. And this question may be raised by prohibition. *Trainer v. Porter,* 45 Mo. 336; *Henry v. Steele,* 28 Ark. 455. (4) They allege an evil purpose in the bringing of the Merriam suit. Motives actuating suitors in asserting their legal rights can not be the subject of judicial cognizance. 1 Am. and Eng. Encyclopedia of Law, title, Action, p. 179; *Railroad v. Douglas,* 9 N. Y. 445; *Ramsey v. Gould,* 57 Barb. 398; *Mahan v. Brown,* 13 Wend. 261; *Campbell v. Carroll,* 35 Mo. App. 640. (5) There can be no such thing as a cross bill where no cause of action or foundation of any jurisdiction is stated in the petition. R. S. 1889, secs. 2049, 2050. (6) Relator has the right to move independently of Doyle. *Jenkins v. Jenkins,* 1 Paige, 243; *Jones v. Dougherty,* 10 Ga. 274; *McDougald v. Dougherty,* 11 Ga. 570. (7) The only object in setting forth the proceedings of the Merriam suit was to show that that court had taken cognizance of the controversy which the Cape Girardeau court was endeavoring to wrest from it, and that it was competent and had jurisdiction to determine all matters in that controversy. *State v. Hall,* 10 S. Rep. 196; *Thomson v. Truey,* 60 N. Y. 31. (8) It is urged as another

defense, that neither relator nor anyone for him has appeared in the common pleas court and objected to the jurisdiction. This is unnecessary where the defect of jurisdiction appears upon the face of the record, as it does in this case. *First*. The defect of jurisdiction as to subject-matter appears upon the face of the petition and amended petition. *Second*. That the object of the suit was to embarrass the Stoddard court in its proceedings in the Merriam case appears in a general averment in the original petition, and by specific averments in the amended bill, referring to the court and case. *Trainer v. Porter*, 45 Mo. 336; *Vitt v. Owens*, 42 Mo. 516; *State v. County Court*, 41 Mo. 49; *Arnold v. Shields*, 5 Dana (Ky.), 18; 6 Comyns' Dig., title, Prohibition, E; *Walton v. Greenwood*, 60 Me. 356; *Chambers v. Green*, 44 L. Jour. Ch. 600; *DeHaber v. Queen*, 17 Ad. & E. (N. S.) 171–214; *Wardsworth v. Queen*, 17 Ad. & E. (N. S.) 217. *Third*. Merriam was not a party to the suit in the common pleas; his interests are there unlawfully drawn in question, and he is not obliged to abandon his prior suit to become a party there, merely for the sake of raising the question of jurisdiction. *Havermyer v. Superior Court*, 84 Cal. 327–389; *State v. Wilcox*, 24 Minn. 143. (9) It is suggested, in impeachment of the order of Judge Wear, on July 25, 1893, appointing Klotz receiver, that it was made, *first*, after motions for change of venue had been lodged against him by the railway company and Doyle; *second*, without notice; and, *third*, that it was made while the judge was not in Stoddard county. (*a*) The lodging of an application for change of venue does not deprive the judge of jurisdiction; that is not divested until the order granting the same is entered. *In re Whitson'e Estate*, 89 Mo. 58; *Calvin v. Dix*, 79 Mo. 198; *Henderson v. Henderson*, 55 Mo. 198. (*b*) The

appointment of a receiver without notice is a mere irregularity which can only be rectified on appeal, and can not be assailed collaterally. *Greeley v. Bank*, 103 Mo. 212; *Greeley v. Thomson*, 107 Mo. 577. (*c*) Orders have no dependence for validity upon the accidental place of signing, but upon the filing. *Comstock v. Superior Court*, 57 Cal. 625; *Early v. Oliver*, 63 Ga. 11. (10) There is an effort to impeach the first order of Judge Wear appointing a receiver, by showing that the bill of Merriam had not in fact been filed. Where the record shows, as this does, that a receiver was appointed on the same day on which the action was commenced, it will be presumed that each was done in its proper order. *Elwood v. Bank*, 41 Kan. 475

*John W. Noble, George D. Reynolds* and *M. R. Smith* for respondents.

(1) It has never been held that anyone other than a party in interest can invoke the aid of the superior tribunal to prohibit the proceeding of a lower court, because of a conflict of jurisdiction with some other court. *State v. Klein*, 22 S. W. Rep. (Mo.) 693. *First.* Such application is necessarily based, not upon a want of jurisdiction, but, if upon any recognizable ground, it must be upon an unauthorized persistence in an act under acknowledged jurisdiction; and a stranger can sue out the writ, if at all, only when there is an obvious and entire want of jurisdiction in the court to be prohibited. The very assertion that there is a conflict of jurisdiction admits there is jurisdiction in each court. *State ex rel. v. Withrow*, 108 Mo. 7. Where both parties to the action in the lower court wish that court to decide, a stranger can not, as a matter of course, prevent it. *Chambers v. Green*, L. R. 10 Eq. 552. (2) Before the relator could gain any standing in this court

on either of these propositions, to obtain a writ of prohibition, the question of jurisdiction or conflict should have been formally presented in the Cape Girardeau common pleas court, and been pressed there to a decision. *State ex rel. v. Withrow*, 108 Mo. 7; *Barnes v. Gottschalk*, 3 Mo. App. 111, and authorities there cited; *State ex rel. v. Laughlin*, 9 Mo. App. 486, and authorities there cited; *Railroad v. Supreme Court*, 59 Cal. 471; *State v. Henry*, 41 La. Ann. 908; *Ex parte Hamilton*, 51 Ala. 62. (3) It is no reply to say the relator here is a stranger, or that a stranger can sue for a writ of prohibition. The trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them. *Shaw v. Railroad*, 100 U. S. 605; *Richter v. Jerome*, 123 U. S. 233; *Beales v. Railroad*, 133 U. S. 290; Jones on Railroad Securities [Ed. 1879], secs. 361, 433; *Knapp v. Railroad*, 20 Wall. 117; *Coal Co. v. Blatchford*, 11 Wall. 172; *Campbell v. Railroad*, 1 Woods, 368. (4) There has been no such conflict of jurisdiction as calls for the interference by prohibition. The writ will not issue to restrain the action of a court of competent jurisdiction from doing an act within its judicial authority, merely because it may conflict with some act of some other court of co-ordinate jurisdiction. The want of jurisdiction must appear upon the record of the court whose action it is sought to prohibit. *State v. Judge*, 29 La. Ann. 360; *People v. Co. Ct.*, 36 Hun, 218; 2 Spelling's Extraordinary Relief, sec. 1716, p. 1395; *State v. Klein*, 22 S. W. Rep. (Mo.) 693. (5) The receivership of Klotz was absolutely void for the following reasons, also: *First*. Because the receivership of March 3, as was also that of July 25, 1893, was made without any notice whatever. *Railroad v. Jewett*, 37 Ohio St.

649; *Railroad v. Sloan*, 31 Ohio St. 15; *Verplank v. Ins. Co.,* 2 Paige, 438; High on Receivers [Ed. 1876], sec. 111, *et seq. Second.* The first order was made when there was no suit pending, and out of the county of the court making it and was void. High on Receivers [Ed. 1876], 317; Beach on Receivers [Ed. 1887], 50; *Baker v. Backus*, 32 Ill. 79; *Grey v. Doak*, 47 Kan. 236; *Crowder v. Moore*, 52 Ala. 221.; *Hardy v. McClelland*, 53 Miss. 511; *Bank v. Kent*, 43 Mich. 296; *Jones v. Schall*, 45 Mich. 380; *Jones v. Bank*, 10 Col. 473. (6) There has been willful delay in making the application, so that any right that might have by any possibility existed is lost. *In re Denton*, 1 Hurlstone & Coltman (Ex.), p. 654; *Yates v. Palmer*, 6 Dowling & Lowndes, 283. (7) And, even if the receivership attempted to be established by the Stoddard circuit court had been authorized as made, that court did not thereby acquire a priority of jurisdiction over the common pleas court, to control the property. (8) Prohibition will not lie where there can be relief by appeal or writ of error, or other remedy. *Mastin v. Sloan,* 98 Mo. 252; *State ex rel. v. Withrow*, 108 Mo. 1; *Smith v. Whitney*, 116 U. S. 167–176. (9) That court had, and has, complete equity jurisdiction and powers, the same as any circuit court in Missouri. *Fulenwider v. Fulenwider*, 53 Mo. 439; *State ex rel. v. Ross*, 118 Mo. 23. (10) Where the court has jurisdiction of the subject-matter, of the general domain of law, to which the case belongs, prohibition will not lie to prevent the exercise of that jurisdiction in a particular case with which the court is proceeding. *Mastin v. Sloan,* 98 Mo. 252; *State ex rel. v. Withrow*, 108 Mo. 1. It will not lie to restrain the exercise of judicial functions. *Smith v. Whitney*, 116 U. S. 167. (11) It is not the province of the supreme court to assume that a jurisdiction exercised within the general powers of the lower

court is unlawful and indefensible. *Mastin v. Sloan,* 98 Mo. 252; *State ex rel. v. Withrow,* 108 Mo. 1; *Smith v. Whitney,* 116 U. S. 167–176. (12) But, if there were any doubt as to the original jurisdiction of the common pleas court, there can be none of its jurisdiction to proceed on the petition of the railway company and the cross bill of the trustee Doyle, setting up the several mortgages and asking to have them foreclosed in that action. *First.* Because the trustee is the only proper party to sue under the circumstances of this case. He also represents interests that Merriam does not. *Second.* The cross-bill for foreclosure adds additional jurisdiction on which the common pleas court might alone proceed. *Railroad v. Humphreys,* 145 U. S. 82; *Railroad v. Trust Co.,* 22 Fed. Rep. 138; *Jesup v. Railroad,* 43 Fed. Rep. 483; *Morgan's Co. v. Co.,* 137 U. S. 171. The dismissal, even, of the original suit would not carry with it the cross bill; whether voluntary (*Lowenstein v. Glidewell,* 5 Dill. 325; *Co. v. Mill Co.,* 109 U. S. 702; *McConnell v. Smith,* 23 Ill. 560–566), or on the merits (*Co. v. Co.,* 22 Fed. Rep. 138–142; *Donohue v. Co.,* 1 Pacific L. J. 211; *Lemp v. Co.,* 45 Fed. Rep. 483; *Shambley v. Dunsany,* 2 Schoales & L. 718; *Ladner v. Ogden,* 31 Miss. 344; *Worrell v. Wade,* 17 Iowa, 96; *Ragland v. Broadway,* 29 Gratt. 401). (13) The court having jurisdiction had authority to pass on intervening claims and their payment and to issue receiver's certificates therefor. The allowance of certificates for such claims as are mentioned and described by respondents is lawful and of general practice. *Fosdick v. Schall,* 99 U. S. 235; *Railroad v. Humphreys,* 145 U. S. 82; *Morgan's Co. v. Railroad,* 137 U. S. 171; *Miltenberger v. Railroad,* 106 U. S. 286; *Trust Co. v. Morrison,* 125 U. S. 591. And all questions as to the correctness of the court's action as to such claims are triable on appeal. *Kneeland v. Luce,* 141 U. S. 508, and authorities cited.

*R. B. Oliver* for Leo Doyle, trustee, respondent.

(1) Prohibition is an extraordinary remedy and issues only in cases of extreme necessity, and never until the aggrieved party has applied in vain to the inferior tribunal. High on Extra. Legal Rem., secs. 765, 773; 5 Wait's Actions and Defenses, p. 253, sec. 5; *Barnes v. Gottschalk*, 3 Mo. App. 111, and authorities there cited; *State ex rel. v. Withrow*, 108 Mo. 1; *State v. Judge*, 10 S. Rep. (La.) 179; *Ex parte Little Rock*, 26 Ark. 52. (2) The Cape Girardeau court of common pleas had, and has, jurisdiction in all civil actions, and the case of *Railway Co. v. Leo Doyle et al.*, now pending in that court, is a civil action. *Roth v. Tiedeman*, 53 Mo. 491; *Fulenwider v. Fulenwider*, 53 Mo. 442; *State ex rel. v. Ross*, 118 Mo. 23. (3) Where jurisdiction exists, prohibition will not lie; and the fact that the trial court may erroneously decide some of the questions before it will not alter the case. *State ex rel. v. Withrow*, 108 Mo. 8; *State ex rel. v. Burckhartt*, 87 Mo. 533; *Wilson v. Berkstresser*, 45 Mo. 283; *State ex rel. v. Court*, 99 Mo. 216; *State ex rel. v. Smith*, 104 Mo. 419; *People v. Russell*, 49 Barb. N. Y. 351; *Ex parte Green*, 29 Ala. 52. (4) Where a conflict of jurisdiction exists, the almost universal rule is that the tribunal in which the *res* is first seized and brought under the custody of the court by its process must prevail. *Metzner v. Graham*, 57 Mo. 404; *State ex rel. v. Ross*, 118 Mo. 23; *Bank v. Owen*, 79 Mo. 431; *Wilmer v. Air Line*, 2 Woods (U. S.), 409; *Buck v. Colbath*, 3 Wall. 334. (5) The facts in this case affirmatively show that the Cape Girardeau court of common pleas first acquired jurisdiction of the person and *res* before the Stoddard circuit court and issued any process whatever on the bill filed and lodged with the clerk. (6) It is, therefore, manifest that the Cape

Girardeau court first acquired jurisdiction over the persons litigant, and seizure of the property which is the subject of this suit. *Wilmer v. Air Line*, 2 Woods, 409; *State ex rel. v. Ross, supra*. (7) The order of Judge Wear on July 24, 1893, in vacation, attempting to appoint Klotz receiver, was, and is, illegal and void. A motion for change of venue had been filed, based on the prejudice of the judge against the defendants and the undue influence that was exerted by the plaintiff over the judge on the thirteenth of March, 1893. These motions were pending on the twenty-fourth of July. While these motions were pending neither the court nor judge had the power to make an appointment or do anything, except to act on the motion. *Lacy v. Barrett*, 75 Mo. 469; *Barnes v. Mullens*, 78 Mo. 260; *State ex rel. v. Bacon*, 107 Mo. 627.

*Alexander & Green* and *Dickson & Smith* for Mercantile Trust Company, respondent.

BRACE, J.—This is an application for a writ of prohibition. On the third of March, 1893, the relator, who is the holder of $76,200 of the bonds of the St. Louis, Cape Girardeau & Fort Smith Railway Company, secured by deeds of trust on portions of the railway and other property of said company, instituted a suit in the circuit court of Stoddard county against said railway company, Leo Doyle, the trustee in said deeds of trust, and the Mercantile Trust Company of New York, trustee in other deeds of trust made by said company on its property, to recover defaulted interest on said bonds under the following provision contained in said deeds of trust:

"That, if the interest on any of the bonds so to be issued shall not be paid by the party of the first part when the same shall become due, and, if such interest

shall remain in arrears for three months, or in case the principal of said bonds, or any of them, shall not be paid at their maturity, then it shall be lawful for said party of the second part, his successor or successors in trust, on the written request of the holders of not less than one-fourth part of said bonds then outstanding, to take possession of all and singular said premises, property and franchises so conveyed, and as the attorney in fact or agent of the said party of the first part, by himself, his agent or agents or substitutes duly constituted have, use, enjoy and operate the same, making from time to time all needful repairs, alterations and additions, and, after deducting the expense of such use, repairs, alterations and additions, and the costs and charges of such taking possession, and a reasonable compensation for the services of said trustee in such taking of possession and while in possession, which shall not exceed $1,500 per annum, apply the proceeds thereof to the payment of the principal and interest of said bonds issued hereunder remaining unpaid, and which have or may have become due, and upon the written request of the holders of at least one-fourth of said bonds issued hereunder and then outstanding and unpaid, shall cause said premises, real and personal estate, rights and franchises to be sold at public auction in the city of Cape Girardeau, giving at least twelve weeks' notice," etc.

The petition setting forth the plaintiff's cause of action, verified by affidavit, together with certified copies of said deeds of trust were on that day presented to the Hon. John G. Wear, judge of said circuit court, at chambers in vacation of said court, and thereupon he made a provisional order in writing appointing Eli Klotz receiver of said railway company, directing him forthwith to take possession of said railway, and restraining said company and its officers from in any

manner transferring or disposing of the property, and directing the clerk of said circuit court to issue a summons or notice to said defendants returnable Monday, the thirteenth of March, 1893, to appear at Bloomfield, the county seat of said county, before the said circuit court, and show cause, if any they have, why the appointment of said receiver should not be confirmed. The petition, together with the exhibits and said order, was, on said third of March, 1893, filed in the office of the clerk of said circuit court.

On the next day (March 4) George Houck, an attorney and a brother of Louis Houck, the president and general manager of said railway company, and the principal owner of its stock, telegraphed to the latter advising him of the institution of said suit, and that Klotz had been appointed receiver, and the amount of bond required. On the same day the following petition was presented to the defendant, the Hon. Alexander Ross, judge of the Cape Girardeau court of common pleas, in chambers:

"In the Cape Girardeau court of common pleas, within and for the county of Cape Girardeau and state of Missouri.

"St. Louis, Cape Girardeau & Fort Smith Railway Company, Plaintiffs.

v.

"Leo Doyle, Ed. Hidden & Mercantile Trust Company of New York, Defendants.

In the Court of Common Pleas of the County of Cape Girardeau, Missouri, May Term, 1893.

"Your petitioner, the said St. Louis, Cape Girardeau & Fort Smith Railway Company, states that the St. Louis, Cape Girardeau & Fort Smith Railway Company was organized under the laws of the state of Missouri, in 1880; that it was originally organized under the name

and style of the Cape Girardeau Railway; that afterwards its name was changed to the Cape Girardeau Southwestern Railway, and that more recently the name of said railroad was changed to the St. Louis, Cape Girardeau & Fort Smith Railway Company, under the laws of said state of Missouri.

"Your petitioner further states that said railroad issued $100,000 of first mortgage bonds, bonds under the name and style of Cape Girardeau Railway, on its division of road from Cape Girardeau to Delta and that Leo Doyle is trustee in said deed of trust securing said bonds, and that said deed of trust is hereto attached and made a part of this petition. Your petitioner further states that it issued $80,000 of bonds on its line of railroad from Delta to Lakeville, a large portion of which bonds are outstanding and that Leo Doyle is trustee of and in the deed of trust by which said bonds are secured and said deed of trust is hereto attached and made a part of this petition. Your petitioner further states that it issued $200,000 of bonds on its line of railroad from Lakeville to the St. Francois river, and that Leo Doyle is trustee in the deed of trust by which said bonds are secured and said deed of trust is hereto attached and made a part of this petition. Your petitioner further states that it issued $230,000 of bonds on its division of road from the St. Francois river to the main line of the Iron Mountain Railroad, and that Leo Doyle is trustee in the deed of trust by which said bonds are secured and said deed of trust is hereto attached and made a part of this petition.

"Your petitioner further states that a large number of the said bonds and a large number of the coupons of the said bonds are still unpaid, and held by various parties to your petitioner unknown, to wit, the sum of $500,000 and that the said coupons and bonds are an underlying security upon the said property.

Your petitioner further states that afterwards, in 1888, $1,000,000 of consolidated bonds were issued upon said entire railroad of petitioner for the purpose of taking up the said underlying bonds and construct the said railroad from the main line of the St. Louis, Iron Mountain & Southern Railroad to Hunter, a junction with the Kansas City, Fort Scott & Memphis Railroad, and that many persons to your petitioner unknown, are large owners of the said bonds, to wit, the amount of $1,000,000, and the Mercantile Trust Company of New York is trustee in said bonds for the benefit of the holders thereof, and said deed of trust is hereto attached and made a part of this petition. Your petitioner further states that afterwards, to wit, in 1880, a second mortgage income bond of $150,000 was placed upon the said railroad and that the said mortgage income bonds have been issued and that Edward Hidden is trustee in said bond for the benefit of the holders of the same and that said deed of trust is hereto attached and made a part of this petition. Your petitioner further states that an Arkansas extension on bond of $850,000 is authorized on its road, and $225,000 of said bonds have been issued on said railroad and said deed of trust is hereto attached and made a part of this petition.

"Your petitioner further states that the said St. Louis, Cape Girardeau & Fort Smith Railway Company is about one hundred miles long, extending through the counties of Cape Girardeau, Bollinger, Stoddard, Wayne and Carter, and has an equipment of cars and locomotives, the cost of which was $250,000, and that the value of the same to the company is as much. Your petitioner further states that the St. Louis, Cape Girardeau & Fort Smith Railway Company is indebted in the sum of $180,000 on floating debts to various parties, paid out in its behalf, and that for a part of said sum of $180,000, the said company has issued a first

lien upon the steel rails between Williamsville and Hunter, the junction of its road. And further, that it owes on pay rolls about $25,000 to its employees. Your petitioner further states that the said company is unable to pay its interest and has not paid the same for a number of years, and that various parties are now making claims against the said company on account of the said interest, amounting to about $250,000, all of which on said various bonds is unpaid.

"Your petitioner further states that the said property is of great value, to wit, of the valuation of $1,500,000, and amply sufficient to pay all it owes, if judicially and carefully managed so as to preserve the same. Your petitioner further states that it is informed that certain parties with small claims, to it unknown, are now endeavoring to secure control of the said property, by useless and expensive litigation and to so handle it, as to be used to the detriment of its bondholders, stockholders and creditors interested in the same, and to the irremediable injury of all the said bondholders and other creditors. Your petitioner further states that it has been informed that certain parties, to it unknown, now without any immediate necessity, are about to institute suit on coupons, due from your petitioner, and otherwise to harm it, all of which will be a detriment and injury to the great many of its creditors. Your petitioner further states that these suits instituted for the said purpose will very greatly damage the owners of all of the said bonds, and impair the value of the said property, injure the stockholders, and otherwise create expense and detriment to the same, and do great and irreparable harm to the creditors as a body. Your petitioner further states that it is willing to pay its debts, that it has ample property to pay the same, and that if it has an opportunity to do

so, and the same property is handled under the order of the court, as directed by the court, that the same will ultimately pay all liabilities. Your petitioner further states that the said effort to involve this property into litigation by parties, to it unknown, is made, as it verily believes, for the purpose of greatly injuring the same and destroying its value.

"Wherefore, your petitioner prays that your honorable court may appoint a receiver for the said railway, its equipment and all property of whatsoever kind belonging to it, to manage the same, for the benefit of all the creditors thereof, represented by the trustees in said deeds of trust heretofore set out, and hereto attached and made a part of this petition, and the trustees made defendants to this petition, and that all parties and individuals, their servants, agents and attorneys, whatsoever they may be, be restrained and enjoined from in any way interfering with the management and control of the said property, and that the said railway, by its receiver, appointed by your honorable court to use, operate and control the said property for the benefit of all said creditors, bondholders and stockholders as aforesaid, of said railroad company, and for such other and further relief as to your honorable court may seem meet and just.

"ST. LOUIS, CAPE GIRARDEAU & FORT SMITH R'Y.

"By LOUIS HOUCK, President."

Thereupon the said Ross, judge, made an order in writing appointing the said Louis Houck receiver of said railway, approved his bond as such, and, at half past 7 o'clock in the evening of the same day, filed said petition, order, bond and approval in the office of the clerk of said court of common pleas, and on the same day the said Louis Houck made and filed his oath of office as such receiver in the office of the clerk of said court, took possession of, and since has

been holding and managing said railway as receiver thereof, under and by virtue of such appointment.

On Monday, the sixth day of March, 1893, which was the day appointed by law for the opening of the March term of the Stoddard County Circuit Court, Judge Wear failing to appear to open and hold said court, the said George Houck was duly elected special judge of said court, and entered upon the discharge of his duties as such. On the same day the answer of Leo Doyle, trustee, entering his appearance in the suit in the Common Pleas Court, and consenting to the appointment of Louis Houck as receiver was filed in the office of the clerk of that court.

On the seventh of March Klotz filed his oath of office and bond as receiver, which was approved by the clerk, and a notice issued from the office of the clerk of said court pursuant to the order aforesaid of Judge Wear, addressed to the defendants aforesaid in relator's said suit, and a summons in said suit returnable to the next term of said court to be holden on the second Monday in September, 1893, was also issued and delivered to the sheriff on the same day, and the summons and notice of the rule to show cause on the same day served on a station agent of the railway company. On the same day a writ of injunction was issued by Judge Ross, of the Common Pleas Court, directed to said Klotz and a like writ to the relator, E. G. Merriam, prohibiting them from in any way interfering with the said Houck, as receiver of said road.

On the eighth day of March Edward Hidden, as trustee, filed his answer in the office of clerk of the Common Pleas Court, entering his appearance in the suit in that court, and consenting to the appointment of Houck as receiver. On the same day another writ of injunction was issued by Judge Ross, directed to the attorneys of the relator, of like tenor of those thereto-

fore issued against Klotz and Merriam, and on the same day all three of these injunction writs were served upon the parties to whom directed; and upon the same day Klotz appeared before Judge Ross in chambers and presented his petition, together with a certificate of his appointment by Judge Wear as receiver, praying for the cancellation of all orders made by him, the said Ross, as judge of the Common Pleas Court in the proceedings aforesaid. Thereupon, Judge Ross ordered the petition to be filed and continued until the next term of said court. On the tenth day of March, the summons in the suit of relator in the Stoddard circuit court was duly served on Louis Houck and Leo Doyle.

Special Judge George Houck continued holding the March term of the Stoddard Circuit Court until the morning of the thirteenth of March, when the defendant railway company and Leo Doyle by their attorneys, appeared in said court and filed separate motions to vacate the provisional order theretofore made by Judge Wear appointing Klotz receiver as aforesaid, in the said cause of the relator Merriam in said court. 'Said motions to vacate were immediately taken up, heard before said special judge and sustained, and it was thereupon ordered and adjudged by said court "that said provisional order made on the third of March, 1893, appointing Eli Klotz receiver of the St. Louis, Cape Girardeau & Fort Smith Railway Company be, and the same is hereby, vacated, set aside and for naught held." Thereupon the railway company and Doyle, by leave of court, filed separate applications for a change of venue in said cause, which were continued until the next regular term for determination, and thereupon, by a general order entered of record, said Circuit Court was adjourned until court in course.

On the same morning and a short time after said

court had been thus adjourned, Judge Wear arrived at the county seat, repaired to the court house, opened court, and caused an order to be entered of record, after reciting his reasons therefor, "that all minutes heretofore made this day by said George Houck pretending to act as judge of this court be expunged and stricken from the records, and all proceedings pretended to have been made in this court by said George Houck as pretended judge on this day be also stricken and expunged from the record," and thereupon proceeded to consider the rule to show cause in the case of Merriam *v.* The Railway Company *et al.*, returnable that day, confirmed the appointment and qualification of Klotz as receiver, and overruled the application for change of venue for want of notice.

On the sixteenth of March, Klotz made application to this court for a peremptory writ of *mandamus*, commanding the respondents to deliver to him, as receiver as aforesaid, the railway property, effects and credits of the St. Louis, Cape Girardeau & Ft. Smith Railway, aforesaid. An alternative writ, directed to the respondents to show cause why such writ should not be granted, was issued on the twenty-fifth of March, to which return was duly made, the issues heard and determined by this court *in banc* on the twenty-seventh of June, 1893, and the writ denied; the court holding, in an opinion written by GANTT, J., 118 Mo. 23, that the provisional order of Judge Wear appointing the said Klotz receiver of said railway had been legally vacated by the Circuit Court of Stoddard county, presided over by Special Judge Houck on the thirteenth of March, 1893, and that the subsequent action of Judge Wear on that day after the adjournment of said court by Judge Houck was void and of no effect. Consequently the said Klotz had no standing in this court for the relief prayed for.

Afterwards, on the twenty-fifth of July, 1893, there was filed in the office of the clerk of the Circuit Court of Stoddard county, another order made by the Hou. John G. Wear, judge of the said court in vacation, appointing Klotz receiver of said railway, together with his oath of office and bond as such receiver approved by said judge.

In the meantime Louis Houck continued in the management and control of said railway under his appointment as receiver by Judge Ross, by whom many orders were made at his instance in relation thereto, until the May term of said common pleas court. During said term, and on the twenty-second of May, 1893, the railway company filed an amended petition. On the twenty-sixth Lee Doyle, trustee, filed his answer thereto. On the twenty-ninth the appointment of Houck as receiver in vacation, was confirmed. During the term many orders were made in respect of said property by said court, and answers were filed by Hidden, trustee, and the Mercantile Trust Company.

On the twenty-seventh of July, 1893, the relator presented to the chief justice of this court and filed herein, his suggestion for a writ of prohibition, directed to the said Alexander G. Ross, judge of the Cape Girardeau Court of Common Pleas, the said railway company, Louis Houck as president, and as receiver thereof, Leo Doyle, The Mercantile Trust Company, and Edward Hidden, prohibiting them and each of them from further pursuing and holding cognizance of pleas in said cause in said court of common pleas. A rule upon said respondents was thereupon issued to show cause why such writ should not be issued returnable to the October term of this court.

At the September term, 1893, of the Stoddard County Circuit court, the railway company, and Leo

Doyle, trustee, filed their answers in the suit in that court, and by agreement the venue thereof was changed to the circuit court of Iron county.

From the foregoing summary, the condition of affairs when the respondents made return to the rule to show cause at this term of court will sufficiently appear, as well as the issues to be thereupon determined.

Is the power and control which the Cape Girardeau Court of Common Pleas has assumed and is exercising over the *corpus* and affairs of the St. Louis, Cape Girardeau & Fort Smith Railway Company, through a receiver appointed as aforesaid, authorized by law? and, if not, has this court power, under the constitution and laws, to prohibit the further exercise of such control, at the instance of relator? are the principal questions to be determined in this controversy.

The relator contends that the Common Pleas Court never acquired jurisdiction to appoint a receiver of said railway company's property, for two reasons: *First*, because there was not, at the time the judge of said court assumed the authority to make such appointment, nor since has been, an action pending in said court in which a receiver could be appointed, and, *second*, because at the time said judge assumed authority to make such appointment, a receiver had already been legally appointed in a cause pending in the Circuit Court of Stoddard county, a court of competent jurisdiction, to make such appointment.

That the property of the railway company is partly within the jurisdiction of the Cape Girardeau Court of Common Pleas, and that in a proper action pending in that court, it had jurisdiction to appoint a receiver thereof, is conceded. Was such an action pending at the time Houck was appointed? A receiver is an indifferent person appointed by the court to receive

and protect the property or fund in litigation *pendente lite*. The appointment is not the ultimate end and object of the suit, but is merely a provisional remedy or auxiliary proceeding. High on Receivers, sec. 1; 20 Am. and Eng. Encyclopedia of Law, p. 17; R. S. 1889, sec. 2193.

No authority is given by the statutes of this state to its courts, or to judges thereof in vacation, to make such an appointment, except in a pending suit, nor does it inhere in any of them under their general jurisdiction as courts of equity. To ascertain whether there was such a suit pending it becomes necessary to look at the petition filed in the Common Pleas Court; for there could not be a suit pending unless there was a suit commenced. In this state a suit is instituted "by filing in the office of the clerk of the proper court a petition setting forth the plaintiff's cause or causes of action and the remedy sought." R. S. 1889, sec. 531. When the petition is filed the suit is commenced. *South Mo. Lumber Co. v. Wright*, 114 Mo. 326.

The petition filed in the Common Pleas Court is the petition of the railway company, and sets forth, in substance, that it possesses certain property, which is incumbered in different ways, and to secure different amounts, and owes defaulted interest and floating debt to a large amount, and is insolvent; that certain small creditors are about to institute suit on interest coupons due from your petitioner for the purpose of injuring the same and doing great harm to creditors as a body, which will interfere with the operation of the road and impair the value of the security of the bondholders and other creditors; that the value of the property is such that, if handled under the order of the court, it will ultimately pay all liabilities. The court is thereupon asked to take possession of the railroad and its property through a receiver, to enjoin all persons from

interfering with the same, and to use, operate and control the property for the benefit of creditors, bondholders and stockholders.

Where in this paper, called a petition, is to be found a cause of action stated against anybody? What wrong is there complained of, calling for the exercise of the remedial jurisdiction of a court of law or equity? What right of the petitioner, or of anybody else, for that matter, is therein alleged to have been infringed, or even threatened? None whatever. The whole scope of the paper is to inform the judge of the Common Pleas Court in vacation, that the railway company is in debt, in embarrassed circumstances, some of its creditors are about to sue upon its overdue obligations, and to pray the court to take charge of its property and administer it for the benefit of all concerned. In other words, it is simply a petition by a debtor for the appointment of a receiver to manage and carry on its business, so that its creditors can not enforce their legal rights in the courts of the country, and not a petition stating a cause of action either at law or in equity in which, as incident thereto, a receiver might be appointed. The filing of that petition no more instituted an actual controversy between contending suitors in court, than would the filing of a copy of the Lord's Prayer. It laid no foundation whatever for the exercise of the jurisdiction of the court to appoint a receiver, unless some ground for the exercise of that jurisdiction can be found other than an actual, pending controversy in the court which undertook its exercise.

Counsel for respondents Houck and the railway company argue that the jurisdiction of the Common Pleas Court to appoint a receiver on the facts presented in the petition can be maintained on the authority of *Brassey v. Railroad*, 19 Fed. Rep. 663, and the *Wabash*

*cases*, 22 Fed. Rep. 269; 23 Fed. Rep. 513, 865, and 29 Fed. Rep. 618.

It must be conceded that the *dicta* of Judge SHIP-MAN in *Brassey v. Railroad*, *supra*, as quoted in the brief of counsel, would tend strongly to support their contention, producing, as it does, the 'impression. that in that case the action was by an insolvent railroad company, and the relief sought was the appointment of a receiver. This idea is, however, at once dispelled by a correct reading of the extract from the judge's opinion, in connection with its context. That was an action by a bondholder *against* the railroad company. The learned judge after reciting the contents of the bill, said:

"I am of the opinion that when a railroad corporation, with its well known obligations to the public, has become entirely insolvent, and unable to pay its secured debts, unable to pay its floating debt, and unable to pay the sums due its connecting lines, unable to borrow money, and in peril of the breaking up and destruction of its business, and confesses this inability, although no default has yet taken place *upon the securities owned by the orator*, but a default is imminent and manifest, a case has arisen where, upon a bill for an injunction against attacks upon the mortgaged property, and a receivership to protect the property of the corporation against peril, a temporary receiver may be properly and wisely appointed. It is next said that this was a case of collusion between the orator and the railroad corporation. There is no claim that there was any collusion on the part of the second mortgage trustees. If by collusion it is meant that the preparation for, and institution of, the suit were known and desired by the directors, or some of them, in the belief that the granting of the prayer of the bill would be prudent and wise, then there was collusion. If by col-

lusion it is meant that the institution of the suit, or its management, was marked by fraudulent design or purpose, there was not collusion. *The complainant was the actual owner of five mortgage bonds.* They were not placed in his hands, and were not transferred to him fictitiously, and were not bought by him for the purpose of this suit.''

The court refused to remove the receiver that had thus been appointed in a suit pending by a creditor against the debtor corporation, and gives no support to the proposition that a debtor can come into court by petition in the form of an action against its creditors and have a receiver appointed—a proposition that finds support in no adjudication in this country so far as we are advised, except in the single instance of the Wabash receivership.

In the several cases to which we have been cited growing out of that receivership, the validity of the original appointment seems not to have been directly raised or passed upon, but rather accepted as an accomplished fact. The original complaint does not appear. Its substance is, however, recited in 145 U. S. p. 84. In *Central Trust Co. v. Wabash*, 29 Fed. Rep. 623, TREAT, J., briefly states the nature and origin of the proceeding as follows:

''In order that this matter may not be misunderstood, for it is important in its vast-reaching consequences, it should be stated that it was not an application by a mortgagee to foreclose. It was an application by the corporation itself, concerning which a great deal of comment has been made elsewhere. The application was originally made to myself, in this circuit, which is limited in extent. I hesitated. I found that Judge SHIPMAN, a very learned and able judge, had gone over *in extenso* that class of thought. After further consideration with respect thereto, I

reached the conclusion that his views were correct, to wit: Here is a vast system, extending through many states and many judicial districts. A default, it was certain, would have been made in a few days. What should be done? The interests of all concerned required that some judicial action should be had for conservation of those interests—stockholders, bond-holders, creditors at large, etc. And, after patient thought, I reached the conclusion that Brother Shipman was right. Since that time, fortunately, the supreme court of the United States has said that it is right. Now, if anyone, in or out of judicial position, chooses to dispute the action of this court, that party may settle the controversy with the supreme court of the United States, which is authoritative, so far as the action of this court is concerned."

However prudent and wise the action of Judge Treat, concurred in by Judge Brewer, may have been from a business standpoint, in taking charge of this great railroad system, we have failed to discover that the supreme court of the United States has ever said judicially that, upon such an application, he had power to appoint a receiver to do so. In the only cases to which we have been cited by counsel as supporting this assertion (*Railroad v. Humphreys*, 145 U. S. 82, and *Railroad v. Humphreys*, 145 U. S. 105), the question of the validity of the appointment of the receiver was neither raised nor passed upon by the supreme court. In one of the cases it was suggested that the bill was without precedent, but the court said "we are not called on to inquire as to how that may be," nor were they so called by the issues in the other case. The fact is, the *Wabash case* is *sui generis*. There is no such source of equity jurisdiction as is supposed therein to have been discovered. It is without precedent, and we have found no published case that sup-

ports it. The single case, cited by counsel, of *Pressley v. Lamb*, 105 Ind. 171, in which the appointment of a receiver in an action by one partner against another for settlement of partnership affairs came collaterally before the court for consideration, manifestly does not support it. *Cox v. Volkert*, 86 Mo. 505.

That a court of equity has no inherent power, except in some few cases of particular jurisdiction, to appoint a receiver, except as an incident to and in a suit pending, has hitherto, with the exception of the *Wabash case*, been a universally accepted doctrine, and, outside of that case, the doctrine that a court of equity, without statutory authority, has jurisdiction upon the application of an insolvent corporation to take charge of and administer its affairs through a receiver, not only has no support, but whenever suggested has been repudiated. The following are a few of the many authorities that might be cited in support of these positions: *Jones v. Bank*, 10 Col. 464; *French Bank case*, 53 Cal. 495; *Smith v. Superior Court*, 32 Pac. Rep. (Cal.), 322; *Hugh v. McRea*, Chase's Dec. 466; *People ex rel. v. Judge*, 31 Mich. 456; *Kimball v. Goodburn*, 32 Mich. 11; *Neall v. Hill*, 16 Cal. 145; *French v. Gifford*, 30 Iowa, 160; *Whitehead v. Wooten*, 43 Miss. 523; *Atty. Gen. v. Ins. Co.*, 2 Johns., ch. 370; *Ex parte Whitfield*, 2 Atkyns, 315; Wait on Insolvent Corporations, sec. 183; Gluck & Becker on Receivers of Corporations, sec. 27.

There being no statutory authority in this state for the appointment of a receiver in such a proceeding, the appointment of Houck receiver by the Common Pleas Court, was a nullity, as appears from the foregoing authorities and what has been said; and it follows as a consequence that his appointment is subject to collateral attack. Is the relator in a position to make the attack? By his petition, filed in the office of

the clerk of the circuit court of Stoddard county on the third of March, 1893, he became the plaintiff in a suit in that court, as one of the creditors of the railway company, in a mortgage security made by the company to a trustee for the benefit of such creditors. He sued for himself and all those similarly situated; he sued to enforce a contract by which the company agreed that in case of default in the payment of interest, the trustee might take possession of the mortgage property and apply the income to the payment of the interest, and alleged the default. It was an equitable action *in rem*, of which the court had jurisdiction, and in which a receiver might be appointed. R. S. 1889, sec. 2193; Gluck & Becker on Receivers of Corporations, sec. 15. It was a real controversy of which the court had jurisdiction. The court, in exercise of that jurisdiction, took cognizance of the case, and, having taken cognizance of the case, "is entitled to retain jurisdiction until the end of the litigation, and incidentally to take possession of the subject-matter of the controversy to the exclusion of all interference by other courts of concurrent jurisdiction." Gluck & Becker on Receivers of Corporations, sec. 30.

The subsequent proceedings in that court in that case are important only for the purpose of showing that the jurisdiction thus obtained has been retained, asserted and maintained from the beginning. Whatever irregularities, if any, that may have occurred in the exercise of that jurisdiction, can be corrected only in that court; and to insure such correction, whatever questions may arise as to the manner of its exercise by that court may be determined here on appeal or writ of error, but can not be the subject of the present inquiry, which goes no further than to the jurisdiction of these two courts.

What we have to do with here is, on the one hand,

a suitor in a court of competent jurisdiction seeking a legal remedy against the property of his debtor, and, on the other; the debtor, having notice of that fact, fleeing to the shelter of another court of concurrent jurisdiction and invoking its power to defeat the exercise of jurisdiction by the former court and to deprive the suitor of the legal remedy to which he may be entitled. We have here no race of diligence between two creditors, seeking to subject their debtor's property to the payment of their demands in courts of concurrent jurisdiction, and between whom many of the interesting questions as to priority of right and jurisdiction between such courts, so learnedly discussed by counsel in their briefs, might have arisen. We have a debtor going through the mere form of bringing a suit against his creditors, against whom he had no right of action, by presenting a paper in the form of a petition to the judge in vacation, in which the representatives of the debtor and his creditors, the trustees in the securities, are named as defendants, against whom the debtor had no cause of action, nor made any pretense of having, and praying the court to take possession of its property and administer its affairs, upon the sole ground that it would be a good thing for the company and its creditors, some of whom are about to sue upon its obligations.

It is folly to attempt to disguise the fact that this proceeding was taken before Judge Ross for the express purpose of defeating the legitimate exercise of the jurisdiction of the Circuit Court of Stoddard county in relator's suit in that court. That of some such purpose he was advised in the beginning, appears upon the very face of the petition, and that, after full knowledge that such was the object and effect thereof, he has asserted and does still assert and maintain his right and the jurisdiction of his court over the subject-matter of that suit, so as to

impede and hinder the relator in the prosecution of his suit, and the exercise of the jurisdiction of that court therein in his behalf, in a due and orderly manner, is beyond question. The only excuse for so doing that can be found in this voluminous record, is that the relator, in bringing his suit, was influenced by a malicious motive, which is alleged in the amended petition, and which is no excuse at all. For it goes without saying, that "a malicious motive in asserting a legal right to do a particular thing will not give a right of action." 1 Am. and Eng. Encyclopedia of Law, 179.

The only precedent for the assertion or maintenance of the jurisdiction of the Common Pleas Court is the case of the *Wabash receivership*, which is without precedent and ought to have no following. The exercise of such jurisdiction is not authorized by any statute of this state, and is not found within any source of equitable jurisdiction with which we are familiar, or of which the books speak, and, being without warrant of law, its further exercise ought to be prohibited.

By the constitution this court is invested with "a general superintending control over all inferior courts" with "power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same." Const., art. 6, sec. 3. The writ of prohibition is a familiar mode of the exercise of this power, and is an appropriate one to restrain the exercise of jurisdiction by a subordinate court over a subject-matter when it has none and is loudly called for when such jurisdiction is asserted against a court that has jurisdiction and is asserting it, and when the officers of each acting under its orders are liable at any moment to come into physical conflict over the possession of the subject-matter in controversy.

The writ of prohibition as prayed for should go.

The grounds upon which this conclusion has been reached obviate the necessity of discussing the many questions raised and argued by counsel, growing out of the action of the parties and the courts after these two proceedings were commenced, none of which go to the question of jurisdiction, upon which this case turns.

It is therefore ordered that the writ of this court issue prohibiting the said respondent Ross as judge of the Common Pleas Court aforesaid from entertaining any further pleas or taking any further judicial action in said so-called suit, entitled the St. Louis, Cape Girardeau & Fort Smith Railway Company v. Leo Doyle, Ed. Hidden and the Mercantile Trust Company of New York, in said Court of Common Pleas, and prohibiting the other respondents from further prosecuting any further pleas therein, and commanding the said Houck to turn over all the property of said railroad company that has come into his hands as *de facto* receiver thereof under the orders of said common pleas court to the receiver *de jure* thereof who has been, or may be, appointed by the Circuit Court in which the suit aforesaid of relator is pending, and that he account therefor to such receiver under the supervision of said Circuit Court; BLACK, C. J., and SHERWOOD and MACFARLANE, JJ., concurring; BARCLAY, GANTT and BURGESS, JJ., dissenting.

BARCLAY, J. *(dissenting)*.—This is an original proceeding for a writ of prohibition. It was begun in July, 1893, during vacation of the court.

A petition was filed by Mr. Merriam, the relator, and submitted to the chief justice, who then made a rule or order upon the defendants to show cause at the opening of the ensuing October term of the court, why a writ of prohibition should not be awarded, requiring

them to no further hear or prosecute a certain cause entitled "St. Louis, Cape Girardeau & Fort Smith Railway Company, plaintiff, v. Leo Doyle, Edward Hidden, and the Mercantile Trust Company of New York, defendants," pending in the Cape Girardeau court of common pleas.

The defendants in the case at bar are the judge of that court, the said railway company, Louis Houck, as president and as receiver of that company, and the three trustees just mentioned.

To this rule defendants filed returns, setting forth the proceedings in the suit in the common pleas court, and asserting the jurisdiction of the latter to determine that suit.

To some of these returns "exceptions" have been taken; but upon all of them the relator has moved to make absolute the rule for a prohibition.

The facts which we consider decisive of the present application are admitted by all the parties in their respective statements to the court.

The merits of the controversy have been fully discussed at the bar and in the briefs, so it is not necessary to further refer to the formal steps by which the merits have been reached.

The record here is, however, embellished with a mass of details, many of which are not relevant to the precise issue for determination now.

The St. Louis, Cape Girardeau & Fort Smith Railway Company (which for convenience we shall call the Cape Railway) filed a petition, March 4, 1893, in the Cape Girardeau court of common pleas against Leo Doyle, and the other above named trustees in the three deeds of trust in the nature of mortgages, then existing as liens upon the real and other property of that railway. The petition recited fully the history of the railway and of the mortgages and other indebt-

edness thereof, its present inability to pay its obligations as they matured; that default upon the interest coupons of the bonds secured by the mortgages had occurred but that the property was ample to meet its debts if "handled under the order of the court;" and praying that its property be applied to the discharge of its debts under the direction of the court, to which end the appointment of a receiver for the railroad and all its appurtenances was asked as well as an injunction against all persons from interfering with the management and control of its property; and for general relief.

The petition, without further enlarging upon its contents, may be briefly described as one in which the railway company gracefully sought the refuge of the court to have its own mortgages foreclosed, and meanwhile to remain in charge of a receiver, with a view to prevent seizure of its property, piecemeal, by its creditors.

It was modeled after certain noted precedents, the soundness of which, in point of law or equity, we shall not necessarily have to discuss at this time.

Upon consideration of that petition, Judge Ross, of the common pleas court, on the same day, made an order appointing Louis Houck receiver of the entire railway property in question. Mr. Houck qualified as receiver by giving an approved bond, and filing his oath of office. He forthwith took possession of the property and has remained ever since in possession, operating the railway as such receiver. March 8, 1893, Mr. Hidden as trustee filed an answer in the cause, consenting to the appointment of Mr. Houck as receiver.

On March 7, 1893, an injunction was issued by Judge Ross to Mr. Klotz and Mr. Merriam, the present relator, prohibiting them from interfering with Mr. Houck as receiver. On the next day a like injunction was issued to the attorneys of Messrs. Klotz and Merriam.

On the same day, March 8, 1893, these injunctions were served on the parties to whom they were directed. On that day Mr. Klotz appeared before Judge Ross and presented a petition, reciting his appointment as receiver of the Cape railway property by Judge Wear, as judge of the Stoddard county circuit court, and praying for an order of delivery of the property to him as receiver. This petition was by Judge Ross ordered filed, and continued to the next term of the common pleas court.

May 22, 1893, the railway company filed an amended petition in that court, to the same general effect as the first, but somewhat more elaborately framed. To this the defendant, Mr. Doyle, as trustee (who had entered his appearance immediately on the filing of the original petition), appeared, May 26, 1893, and interposed an answer in the nature of a cross bill, setting up at large his interest as trustee in the property under the mortgages, approving the receivership, asking a sale of the mortgaged property of which he is trustee, and the application of proceeds to the secured debts.

The court of common pleas, May 27, 1893, acted upon the amended petition and the answer or cross bill by entering a renewed or confirmatory order of appointment of Mr. Houck as receiver of all the railway property, covered by the mortgages represented by Mr. Doyle as trustee, and made several subsidiary orders respecting the administration of the receivership.

At this stage of the suit, Mr. Merriam applied to this court for a prohibition as first above stated.

Mr. Klotz had previously applied for a mandamus with the result shown by the report of that litigation. *State ex rel. Klotz v. Ross* (1893), 118 Mo. 23.

The facts of the proceedings before Judge Wear and in the Stoddard county circuit court in the suit of

Mr. Merriam against the Cape railway and the three trustees above named, have been given in the opinions in the mandamus case (118 Mo. 23), and need not be repeated. But some facts have since transpired which are supposed to have relevancy to the issue before us.

July 24, 1893, Judge Wear, in vacation, re-appointed Mr. Klotz as receiver of the railway property, and he qualified as such on that day. Since then that proceeding has been transferred by change of venue to the circuit court of Iron county; and in it the Cape railway has filed an answer, setting up fully the proceedings in the common pleas court, above described, and asserting that, because thereof, and of the possession by Mr. Houck as receiver, and of other facts recited, the common pleas court has complete possession and jurisdiction of the property, and should not be disturbed therein by any other court of co-ordinate jurisdiction.

Mr. Merriam has at no time appeared, specially or otherwise, in the court of common pleas, or filed any objection to its course of action or jurisdiction in the matter of the receivership. The defendants, however, claim that he is legally represented there by Mr. Doyle, trustee in the mortgages securing the bonds held by Mr. Merriam.

The foregoing is a sketch of the substance of the controversy. Any other facts that may seem to bear materially on the result will be mentioned in the course of this opinion.

1. The Cape Girardeau court of common pleas, by the law of its creation, has concurrent original jurisdiction with the circuit court of the county "in all civil actions at law." Laws, 1851, p. 201; R. S. 1889, p. 2219. This language was held in *Roth v. Tiedeman* (1873), 53 Mo. 489, to confer jurisdiction co-extensive with that of the circuit court, over all civil actions of

whatever nature; and in *Fulenwider v. Fulenwider* (1873), 53 Mo. 439, it was expressly decided that such civil actions included suits involving equitable rights and remedies.

These decisions have stood unreversed for thirty years; and we adhere to them without discussion as expressing the law touching the right of the common pleas court to hear and adjudicate suits of the general class to which the receivership proceeding in that court belongs.

The allegations of the original, as well as of the amended petition, show that the real property of the Cape railway lies partly in the city of Cape Girardeau.

So that upon the law and facts shown by the record in that case, that court had originally authority to entertain and decide a suit of that nature at the time it took possession of the property in litigation through the agency of Mr. Houck as its receiver.

It, hence, had jurisdiction of the subject-matter of that proceeding, as has been held by this court in many decisions, of which we cite but a few. *Walker v. Likens* (1857), 24 Mo. 298; *State ex rel. v. Weatherby* (1869), 45 Mo. 17; *Rosenheim v. Hartsock* (1886), 90 Mo. 365; *Hope v. Blair* (1891), 105 Mo. 93.

2. It is, however, claimed in this connection that the common pleas court had no power to appoint its receiver, because the original petition, invoking its authority in that behalf, was so deficient as to state no cause of action, and that consequently the appointment must be treated as a nullity.

It may be well to repeat what was said in a recent case in the first division, without dissent, that "where enough facts are alleged to disclose that the case falls within a class of proceedings which the court is lawfully authorized to hear and decide, the question of the sufficiency of the showing, made for the purpose of

setting the court in motion, is one of law for the determination of the court itself to which the showing is addressed, whatsoever its rank." (*Dowdy v. Wamble* (1892), 110 Mo. 284, 285).

In *State ex rel. Ozark County v. Tate* (1892), 109 Mo. 270, it was unanimously held by the first division that the omission to state a cause of action was not even an irregularity in procedure justifying the setting aside of a judgment on motion after the lapse of the judgment term. If that proposition be correct, for stronger reason would not such omission furnish ground to treat the action of a court, on such a defective pleading, as a nullity upon a collateral attack?

In *State ex rel. v. Railroad* (1889), 100 Mo. 61, it was remarked, in the discussion of the main point involved, that it would be manifestly improper to issue a writ of prohibition against a court having jurisdiction of a cause, upon an application alleging that it was about to pronounce judgment on a petition which did not state a cause of action, but which the trial court had held sufficient. ·

In the case before us the common pleas court had judicial power to appoint a receiver of the property in question upon a proper state of facts. If the original application for the exercise of that power was defective, even defective in substantial respects, it was subject to amendment, which would relate back to the time when the pleading which it amended was filed. It was expressly so held by the first division in *Lilly v. Tobbein* (1890), 103 Mo. 477.

The general rule has long been recognized in this state that proceedings which are defective or insufficient, but yet amendable, are not void merely because of such insufficiency.

It was said in *Hardin v. Lee* (1873), 51 Mo. 241, that the fact that the court can make the amendment

shows "that the proceedings are merely erroneous or irregular, and that the court has jurisdiction." That ruling has been repeatedly followed in this state.

In one of the decisions applying it, we note that it is further added, in the argument of the court, that a judgment could not be declared void in a collateral proceeding because based upon a defective petition. *Burnett v. McCluey* (1887), 92 Mo. 230. The same idea was advanced again in *Dollarhide v. Parks* (1887), 92 Mo. 178.

It can not, we think, in view of these positive expressions of principles in former cases, be correctly held that, if the court of common pleas had lawful power to appoint a receiver of the property in question, upon a proper showing of the facts, its act in making such appointment is necessarily void, in this collateral assault upon it, because the showing on which that court acted was insufficient, in the estimation of some other court, to warrant the ruling which the former court saw fit to make upon that showing.

3. But it must further be remembered that the original petition for a receiver was amended in some particulars during the proceedings, and that Mr. Doyle, one of the defendants therein, interposed an answer in the nature of a cross bill, uniting in the request for the receivership, and praying such action by the court in that matter as he claimed was equitable and proper, in the interest of the creditors secured by the mortgages in which he is trustee.

Whatever opinion may be entertained of the correctness of the ruling of the court in originally appointing a receiver at the instance of the corporation itself, it is plain, we think, that the joinder of the trustee in that application, as indicated, gives the proceeding a far more certain and safe foundation for judicial action than the case at first possessed. The trustee certainly had the

right, upon the facts submitted by the company, to ask the intervention of a court of equity for the foreclosure of the mortgages in which he was trustee and for the appointment of a receiver in aid of that result. The action of the court in granting that request, of the trustee and of the corporation severally, is very clearly one in which the common pleas court had jurisdiction to take in the exercise of its general powers as a court of equity. This proposition is too self-evident to require argument. *Railroad v. Humphreys* (1892), 145 U. S. 82; *Railroad v. Union Rolling Mill Co.* (1884), 109 U. S. 702.

4. It appears, then, from the record of the court, whose right to proceed is called in question, that it has jurisdiction of the subject-matter of the litigation.

The next point for consideration is, whether or not its right to deal with that subject-matter is affected by the proceedings which took place before Judge Wear, or in the circuit court of the neighboring county.

The real issue sought to be submitted, as decisive of the application for a writ of prohibition, is, which of these two receivers has the better title or right to possession of the railway line.

The decision of that issue depends upon the views of law that may be adopted, upon several mooted points, by the authority which shall finally determine that issue, after a finding of the exact facts bearing thereon, from a great mass of conflicting evidence concerning them.

The main position taken by Mr. Merriam, as relator, now is that, by virtue of the proceedings before Judge Wear, Mr. Klotz became invested, as receiver, with a right to possession of the railway property now in custody of the receiver of the common pleas court, and that consequently the latter court has no jurisdiction to entertain or adjudicate the pending cause.

On the other side, defendants insist that the orig-

inal appointment of Mr. Klotz, as receiver, was void for several reasons, one of which is because, as they allege, the appointment was made by Judge Wear beyond the territorial limits of Stoddard county. Another is that, if originally valid, the appointment was afterwards vacated by the Stoddard circuit court. They also assert that the later appointment of the same receiver in July was void because of the then pending applications, on file, for a change of venue, based on the alleged disqualification of the judge to act in that proceeding.

In reply the relator urges that the jurisdiction to proceed with the foreclosure (and incidental receivership) belongs to the court in which the first formal steps were taken to that end, and that they were taken in the Stoddard circuit court. This last mentioned fact the defendants deny, and also seek to avoid by the contention that the right to proceed belongs properly to the court which has subjected first the property in question to its process by seizure.

The case is further complicated by charges of fraud and conspiracy, as indicated in the report of the proceeding in this court for a mandamus (118 Mo. 23; 23 S. W. Rep. 196).

We are asked by relator to solve all these questions of law here and now; and incidentally to decide the questions of fact on which the former depend.

If, upon doing so, we should conclude that the receivership of Mr. Klotz has priority of right over that of Mr. Houck, it is supposed that such a conclusion, founded on our view of facts entirely outside the record of the court of common pleas, would have the legal effect to annihilate its power as a court of equity to entertain the application for a receiver upon which it has acted, and to render all the proceedings in that cause void from the beginning.

Ordinarily we would think that the mere statement

of such a proposition would sufficiently reveal the inherent weakness of it.

It is no new or unusual thing to bench or bar that the same property is found so situated as to form the subject of litigation in several jurisdictions. Conflicts of rights, depending upon the proceedings of different courts, with respect to the same property, are of frequent occurrence, as the reported cases show. Brown on Jurisdiction, sec. 95.

In Missouri, by the express provisions of our code, the fact that "there is another action pending between the same parties, for the same cause, in this state," is an objection to a petition which may be interposed by a demurrer if it appears from the petition itself. If it does not so appear, that defense must be made by answer. If it is not submitted to the court, either by demurrer or answer, it is waived, and can not be insisted upon thereafter as a defense. R. S., 1889, secs. 2043, 2047.

These sections of our statute law indicate, as plainly as language can, that jurisdiction of the subject-matter of a cause does not depend on whether or not another action is already pending between the same parties for the same property. They also indicate that the court in which the second action is brought for the same property is vested with authority to determine the validity of that objection to the proceeding, either upon demurrer, if the fact is conceded, or by trial of the issue as to such fact, if set up first by answer.

In the case at bar both proceedings as they now stand are in substance to foreclose mortgages. The receiverships are ancillary to that main purpose. Giving relator the benefit of the view he takes (though it is stoutly disputed by arguments founded on the terms of the three mortgages on the various parts of the railway property), namely, that the two proceedings are

in their general scope and purpose identical (though we do not decide that point), it is, nevertheless, within the judicial power of each of the courts to determine whether or not a prior action of the same nature was pending when that before it was commenced, if the sections above cited from our code of procedure were not written in vain.

Jurisdiction to hear and determine a controversy includes the power to hear and decide all questions of law or fact which bear upon that controversy, subject to the right of review (if any) provided by law, unless that jurisdiction is in some wise limited by the law creating or regulating it.

The right of a court to entertain and adjudicate a subject of litigation, lawfully committed to its judicial power, can not be made to depend upon the fact (outside of its record) whether or not some other court has entertained a similar proceeding touching the same subject. Its ruling, after due consideration of such a fact when submitted to it, may decisively affect the correctness of the court's action upon the subject involved, or infect it with reversible error, but it can not take away its power to deal with the matter committed by the law to its decision.

This proposition was directly decided in *State ex rel. v. Withrow* (1891), 108 Mo. 1, with the concurrence of all the judges of the second division.

That case is plainly decisive of this and the principles on which it is founded have been repeatedly recognized and acted upon by many courts whose opinions are entitled to great consideration. *Joseph v. Henry* (1850), 1 L. M. & P. 388; *In matter of The Charkieh* (1873), 8 L. R. Q. B. 197; *Broad v. Perkins* (1888), 21 Q. B. Div. 533; *In re Fassett* (1892), 142 U. S. 479 (followed *In re Engles* (1893), 146 U. S. 357); *In re Morrison* (1893), 147 U. S. 14.

In our judgment it is important to adhere to the principles above declared.

The writ of prohibition has not been regulated by statute in this state. In determining when it shall issue, we are left to follow the principles and usages of the common law.

The true function of the writ is to check the exhibition of judicial power beyond the lines marked out by law as the limits for its exercise. It may be used to prevent action by a court in excess of its legitimate authority in the course of a cause whose subject-matter lies within the general cognizance of the court, as well as to forbid assumption of authority over a cause not committed by the law to its decision. But it can not be applied to compel a judicial officer to substitute the opinion of some other court for his own, upon such an issue as that involved in the case in the Cape Girardeau common pleas court, namely, whether or not another action is pending between the same parties for the same property in some other forum.

Under our statutes already cited, the determination of such an issue belongs rightfully to the court in which that issue is raised in any action. Hence a ruling thereon would not be a proper subject for a prohibition; certainly not where, as here, the facts supposed to affect or defeat the right of the court to proceed, are outside the record or judicial cognizance of the court, and the latter has never been called upon to rule upon them. *State ex rel. v. Judge* (1892), 11 S. Rep. (La.), 935; *Hudson v. Judge* (1879), 42 Mich. 239.

If, whenever a question of priority of right to property depends on the priority (in legal force and effect) of process or orders of different co-ordinate courts of Missouri, this court is to take up the controversy and settle it by a writ of prohibition, before

the courts of first instance have passed upon it, this court would soon find itself called upon to decide a great number and variety of cases and issues which the trial courts are equally authorized to determine, and which their machinery gives them greater facilities to determine conveniently.

We should certainly assume in advance of the submission of any such issue or controversy to a trial court that it will decide it fairly, impartially and in obedience to the principles of law.

The suggestion that the use of prohibition may be necessary to prevent a physical conflict between the parties or officers of these courts, we regard as of little weight. The parties in possession of any property, that forms the subject of litigation, are entitled to retain it until there is an adjudication of the right to possession, or until finally ordered by competent authority to surrender that possession. Any hardship there may be to one wrongfully kept from the possession of his own, during the pendency of legal proceedings to assert his rights, is one which is unavoidable under our system of jurisprudence; and can not be made the basis for a departure from the usual and orderly mode of administering justice according to existing law. *Porter v. Sabin* (1893), 149 U. S. 473.

We conclude that the writ of prohibition should be denied, and the preliminary rule upon defendants discharged. Hence we dissent from the judgment of the majority of the court granting the writ and deciding upon the present right to the possession of the property in the custody of the receiver of the common pleas court.

Judges GANTT and BURGESS concur in this opinion.