## STEELE LUMBER COMPANY *v.* LAURENS LUMBER COMPANY *et al.*

| | |
|---|---|
| 98 | 329 |
| 111 | 557 |
| 98 | 329 |
| 121 | 23 |
| 121 | 519 |
| 98 | 329 |
| 129 | 569 |

1. Where one of two or more defendants against whom a judgment has been rendered, brings a writ of error to reverse the same, without joining his codefendants as plaintiffs in error, they may be added by motion in this court, with the privilege of uniting with the original plaintiff in error in assigning errors, or of severing, in which latter event they may, if desired, be heard in defense of the judgment sought to be reversed.

2. A corporation cannot, as a plaintiff, maintain an equitable suit to marshal its own assets.

3. To such a proceeding, by whomsoever filed, the corporation is itself an indispensable party defendant.

4. A general creditor without lien is not entitled to maintain such a proceeding in order to obtain an injunction against his debtor or to secure the appointment of a receiver.

5. The conversion by another of property belonging to a corporation, gives no right to a stockholder to sue in his own name for such conversion; especially where the corporation itself in due time resorts to what it regards as its appropriate legal remedy, and no negligence or collusion is imputed either to the corporation or the board of directors which would be prejudicial to the interest of such a stockholder.

6. The institution by a corporation of an equitable action for the recovery of certain of its property alleged to have been illegally converted by another, with damages for the conversion, even though a receiver be appointed under such a proceeding, does not authorize the admission, by amendment, of creditors of the corporation as parties plaintiff to such a suit. If such creditors are entitled to relief over against the alleged wrong-doer, in the event of a recovery by their debtor, such relief may be granted, either upon an independent petition, or upon a petition *pro interesse suo* filed by them, containing a statement of their equi-

ties and the ground of equitable relief, with prayers appropriate to the relief sought.

7. Where, upon the filing of such a suit, a receiver is appointed to take charge of the property in controversy, and creditors of the corporation file petitions *pro interesse suo*, claiming liens upon such property, and the court directs the receiver to deliver the property to the defendant upon its giving bond for the eventual condemnation money, and a bond is accordingly given conditioned for the payment of any sums which may be recovered against the defendant upon the final trial, inasmuch as the intervening creditors under the pleadings could not in any view of the case recover a money judgment against the defendant, judgment could only be lawfully entered on such bond for any money judgment recovered by the original plaintiff against the defendant. The mere fact that money judgments are rendered in favor of such creditors against their debtor, and a lien is attached by the decree to the property delivered to the defendant, is no such a recovery of a sum against the defendant as would justify a judgment on the bond in their favor.

8. Where one corporation, upon part payment of the purchase price, delivered into the possession of another corporation real and personal property, which property, when so delivered, constituted very nearly the entire assets of the latter, under an agreement duly executed and recorded, by which the former undertook to sell and properly convey such property upon the payment of a stipulated sum, and upon the condition of compliance with certain intermediate conditions imposed upon the proposed purchaser for the protection of the proposed seller, and upon the breach of such conditions, it is agreed between the presidents of the respective corporations that the proposed purchaser shall redeliver the property in satisfaction of the balance of purchase money remaining unpaid, which is accordingly done, even though the president of the purchaser may not have had authority from his board of directors or otherwise to enter into such an arrangement, yet the entry of the seller corporation under such an arrangement, although it may amount to a conversion for which damages may be recovered, does not subject it to a forfeiture of purchase money as a fixed penalty for its wrong. Against a suit for the tort and conversion, it may still, under appropriate pleadings, set off the unpaid purchase money.

9. Where, under such an arrangement, the seller corporation resumes possession of the property in question, the purchaser corporation has its election either to ratify or to repudiate the transaction. It it elects the former, it must comply with the alleged unauthorized agreement; if the latter, it may either yield its possession and sue, as upon a tortious entry, for the

purchase money paid, with interest; or it may sue for and recover its possession of the property; or it may sue for the property itself, with damages for the conversion, in which latter event it will be still liable for the unpaid purchase money. Hence, where in such a case the purchaser corporation, jointly with some of its stockholders, filed against the seller an equitable petition by which it repudiated the act of its president as unauthorized, and alleged that the entry of the seller corporation was wrongful and tortious, but nevertheless claimed for itself title under the original agreement, and under such a proceeding caused the property in question to be seized as a part of its property, the filing of such a proceeding amounts to an election to claim under the original agreement, and the effect of this election, relatively to the complaining corporation, is to restore the parties to the position in which they stood prior to the attempted "rescission," and in all subsequent stages of the litigation the complaining corporation will be held to this election; and hence if thereafter, upon its own prayer and that of other intervening creditors, the property be administered as that of the complaining corporation, it will be estopped to claim a restitution of the purchase money paid, and the lien of the vendor for its unpaid purchase money must out of the proceeds be first discharged, or provided for in its decree before the court would be authorized to administer the property as assets of the purchaser corporation.

10. A subsequent amendment made by the plaintiff, praying for the repayment of the purchase money with interest, even if allowed without objection, could not be the basis of a decree to that effect in the face of the plaintiff's prior inconsistent election to insist upon the performance by the defendant of the original agreement, and upon its right to the property itself. In equity it must do equity, and hence cannot claim both the property and a restitution of the purchase money paid. Its election to claim the property is inconsistent with the election to claim a restitution of the purchase money, and the former, being first made, must prevail.

11. The fact that subsequently to the filing of this petition, the defendant answered claiming the benefit of the alleged unauthorized agreement, and, upon giving bond, was allowed to resume possession of the property, does not affect the election made by the plaintiff in its petition, nor the right of the defendant to have its unpaid purchase money discharged before the property could be legally administered as that of the plaintiff, the purchaser corporation.

12. The decree finally made having been rendered upon the theory that the purchaser corporation was entitled to a repayment of its purchase money as a consequence of the unlawful re-entry

of the seller, and this theory being inconsistent with the prior election of the former to sue for the property itself, the conclusion reached was necessarily erroneous.

April 13, 1896. Argued at the last term.

Equitable petition. Before Judge Smith. Dodge superior court. March term, 1895.

*Candler & Thomson, J. E. Wooten* and *John L. Hopkins & Sons*, for plaintiffs in error. *D. M. Roberts, E. A. Smith, W. M. Clements, DeLacy & Bishop, Haygood, Lovett & Plyer* and *E. Herrman*, contra.

ATKINSON, Justice.

The Steele Lumber Company, a corporation, on the 6th day of May, 1891, entered into an agreement, under the terms of which it undertook, upon the conditions therein expressed, to convey to the Laurens Lumber Company, another corporation, a certain saw-mill and its equipment, together with other personal property appurtenant thereto, all of which is the subject-matter of the present litigation. The agreement to sell was as follows:

"This agreement entered into this the 6th day of May, 1891, between A. B. Steele Lumber Company, a corporation, of the one part, and Laurens Lumber Company, a corporation, of the other part, witnesseth, that the party of the first part has agreed to sell to party of second part all its property, both real and personal, except the lumber cut and stacked at Youngstown Car Works, the iron safe, round top desk, and office chair in its Atlanta office, such lots as it may have bought since the 19th of March last, and all notes, accounts or other credits due it on the first of April last, for the sum of one hundred and fifty thousand dollars, payable as follows: twelve thousand dollars cash, the receipt of which is acknowledged; two thousand dollars on the 30th inst., and two thousand dolars on the 30th of each succeeding month, up to and including the 30th of March, 1892; twenty-one hundred and sixty-six and 66-100 dollars per month for the next twelve months; and twenty-five hundred dollars per month for the next thirty-six months, each and all of the deferred payments evidenced by notes, and bear-

ing interest at the rate of 7 per cent. per annum from 30th of March last; and all of said notes to become due and payable instanter in the event of default for thirty days in payment of any one of them after it shall have become due; provided, however, that no title to said property is to vest in the purchaser until the whole shall have been fully paid for, title to all of said property being retained by the party of the first part until said indebtedness is fully paid.   Party of second part covenants that it will keep insurance upon the mill in good and solvent companies, to the extent of not less than twenty-five thousand dolars, with loss, if any, payable to party of first part, and should this covenant be broken, then the whole indebtedness, all of said notes, shall become due and payable instanter.   Party of second part further covenants that until said indebtedness is paid, or until released from the covenant by party of first part, John C. Anderson shall have the management of the business of said Laurens Lumber Company, and shall reside at the mill and give his personal attention to the care of the property and not suffer it to deteriorate in any particular, but nothing in this covenant contained shall affect the duties of president and secretary as to the execution of notes or other obligations of the company.   It not being the purpose of party of the first part to interfere with the management of the business of said Laurens Lumber Company, but simply to secure the skill of said Anderson in its management until such an amount shall have been paid on the purchase price as will make it safe.   Party of second part further covenants that it will pay the taxes assessed against party of first part for the year 1891, and that it will assume, complete and perform any and all unfinished or unexpired contracts of said A. B. Steele Lumber Company, including any and all rental that may have accrued to E. T., V. & G. Ry. Co. for old iron since first of April last.   In the event said J. C. Anderson shall fail to reside at said mill and give his personal attention and skill to the business and to the protection of the property as above covenanted, immediately upon such breach of covenant each and every of said notes shall become due and payable instanter, and party of first part shall have the right to enforce any remedy allowed by law for the collection of past due obligations or the protection of vendor of property.   It is understood

and agreed that party of second part shall have the right to discount any of its said notes at any time that not less than four are taken up at one payment, by adding interest up to the time of payment and deducting from the amount twelve per cent. of the principal. It is further understood and agreed that should the saw-mill property be destroyed or so greatly damaged by fire as to stop operation, then and in that event should any note mature during such stoppage, its payment shall be suspended until by due diligence operation can be resumed, provided such suspension shall not exceed four months, and party of first part is to allow the proceeds of insurance policies as far as may be necessary to be used in repairing the loss sustained by such fire, applying any excess toward the payment of such of said notes as may then be unpaid. It is further understood and agreed that any property bought by the party of the second part to supply the place of any used or consumed, shall be in lieu of that so used or consumed, and title thereto shall vest in party of first part until said indebtedness is paid, and when said property is fully paid for, title shall then vest in the Laurens Lumber Company. In witness whereof, the parties hereto, by their duly authorized officers, have executed this agreement the day and year first aforesaid."

The agreement above quoted was duly recorded, and thereunder the Laurens Lumber Company took possession of the property covered thereby, and in part execution of the agreement paid a part of the purchase money amounting to fifty thousand dollars or upward.

On the 15th day of October, 1892, another agreement was entered into by and between the Laurens Lumber Company, acting by and through its president, E. S. Nace, and the Steele Lumber Company, by the terms of which the property in question was restored to the possession of the Steele Lumber Company. The agreement under which this last act was accomplished was as follows, to wit:

"Whereas, on the 6th day of May, 1891, the Steele Lumber Company sold to the Laurens Lumber Company certain property in the county of Dodge, retaining title thereto, and provided that upon certain conditions time payments

extended should become due, which sale is evidenced by a written contract recorded in the clerk's office of the county of Dodge in book "D" on the 18th day of May, 1891; whereas, said Laurens Lumber Company has failed to pay said indebtedness as provided in said agreement, has failed to keep the property insured as provided in said agreement, and has otherwise broken its covenant as in said agreement contained, whereby said entire indebtedness has now become due; and whereas, said Laurens Lumber Company has cut the timber from a great portion of said property, and is now unable to pay said indebtedness and desires to rescind said agreement and restore to said A. B. Steele Lumber Company the property obtained from it as aforesaid and such other property as it has purchased to supply the place of any of the property of said A. B. Steele Lumber Company used by said Laurens Lumber Company as provided in said agreement; and whereas, said A. B. Steele Lumber Company is willing to take the property back and cancel said indebtedness; and whereas, it would involve both parties to said agreement in needless expense to remit said Steele Lumber Company to an action in the court, which the property will not bear, all of said property not being sufficient to more than pay, even if it will fully pay said Steele Lumber Company the indebtedness due it:

"Now, in consideration of the premises, said parties mutually agree to rescind said contract, and said Laurens Lumber Company relinquishes all claim in, to or upon said property or any of it, and transfers and delivers the same to the said Steele Lumber Company; and said Steele Lumber Company agrees to said rescission of the contract, and accepts said property in discharge of the indebtedness due to it from the Laurens Lumber Company.

"In witness whereof, said Steele Lumber Company and said Laurens Lumber Company have executed this instrument in duplicate, this 15th of October, 1892."

Immediately upon the restoration of the property to the possession of the Steele Lumber Company, a petition was filed in the name of the Laurens Lumber Company and in the name of two other persons who alleged themselves to be stockholders in that company—one of them alleging that he was also a creditor of that company. Process was

prayed against the Steele Lumber Company, against A. B. Steele, who was the president of the Steele Lumber Company, against E. S. Nace, who was the president of the Laurens Lumber Company, and against the sheriff of Dodge county. Aside from the prayer for process, the names of the persons against whom the petition for equitable relief is exhibited do not appear, those names in the process being the only parties defendant to the proceeding. The plaintiffs in their petition alleged the purchase of the property by the Laurens Lumber Company, and attached as an exhibit to their petition the agreement hereinbefore first recited. They alleged that the agreement entered into for the restoration of the property to the possession of the Steele Lumber Company was fraudulent, and it was further alleged on behalf of the stockholders who were parties plaintiff, that, amongst other evil consequences designed to be accomplished by this fraudulent and collusive transfer of the property of the Laurens Lumber Company, it was the purpose of the parties thereto to depreciate and destroy the value of the stock held by them in the Laurens Lumber Company. It was further alleged that Nace, the president of the Laurens Lumber Company, had no authority from the board of directors or otherwise to so dispose of the property of the Laurens Lumber Company, and that the agreement between himself and the Steele Lumber Company was collusive; that it was intended to be and operated as a fraud upon the Laurens Lumber Company, and as well a fraud upon its creditors, to its great injury and damage; that under the agreement, a copy of which is second above set out, the Steele Lumber Company had entered into possession of the property in question, was wrongfully holding the same adversely to the Laurens Lumber Company, and that since the same had been taken possession of by the Steele Lumber Company, under the agreement above stated, a considerable proportion of the property had been levied upon by the sheriff under liens in favor of creditors of the

Laurens Lumber Company, and was now being held by him. The petition alleged that "this proceeding is brought for the purpose of marshaling the assets of the said Laurens Lumber Company for the benefit of all its creditors, that its said creditors may have their debts satisfied as far as possible; the property of said Laurens Lumber Company consisting of saw-mill plant as aforesaid, the lumber aforesaid, certain accounts and bills receivable, and certain timber rights and privileges, as will be seen by their lease contracts upon the land and timber in the county of Dodge; and to that end the privilege is hereby extended to all of the creditors of the Laurens Lumber Company to be made parties hereto upon such terms as to the court may seem meet, proper, reasonable and just." It was alleged that in consequence of the wrongful and illegal conduct on the part of the defendants, the Laurens Lumber Company had been damaged in the sum of one hundred thousand dollars. It was alleged that it would be inequitable and unjust for the Steele Lumber Company to retain in their hands the whole amount of money which had been paid to them under the contract and likewise to repossess themselves of the total property embraced in said contract, which property at the time of its illegal seizure by the Steele Lumber Company was in better condition by several thousand dollars. Upon this petition there was a prayer for the appointment of a receiver to take charge of all the property covered thereby, prayer for injunction against the several parties against whom process was prayed, prayer for judgment against the Steele Lumber Company, Steele and Nace for the damage aforesaid, and likewise a prayer for general relief.

Upon these allegations of the petition the court appointed a temporary receiver to take possession of all the property. Thereafter the defendant, the Steele Lumber Company, answered, denying generally all improper conduct in the transactions alleged against it in the plaintiffs' petition,

claiming that the arrangement for the restoration of the property was legal and authorized, and was made in good faith in an honest effort to pay the debt due the Steele Lumber Company by the Laurens Lumber Company. The defendant Nace likewise filed an answer, but inasmuch as no final decree was rendered against him, and his presence in the case seems to have been treated as merely formal, we will dismiss him with the observation that inasmuch as what he stated in his answer was not considered in the final determination of the case, we do not deem it necessary further to allude to it.

After the filing of the answers of the defendants, but before the hearing upon the application for a receiver was had, a number of persons, some of them claiming to be laborers and others claiming to be otherwise entitled to liens. upon the property of the Laurens Lumber Company, filed petitions in this cause entitled, in which they alleged that the Laurens Lumber Company was indebted to them in certain specified sums, for labor and supplies, which, if proven to have been done and furnished, would have authorized in a proper case a decree in their favor against the Laurens Lumber Company. The petitions alleged that as creditors of the Laurens Lumber Company, they were interested in the result of this cause, and as intervenors they asked that they be made parties, with the right to establish and enforce their rights by appropriate decree, and to plead as might be necessary to that end. Some of them alleged that their liens had been foreclosed and levied by the sheriff of Dodge county upon the property seized by the court in this case before the appointment of the temporary receiver. They adopted the averment of the Laurens Lumber Company that the attempted transfer of this property by its president. to the Steele Lumber Company was fraudulent and void, without adequate consideration, and the result of collusion between Nace and the Steele Lumber Company, made for the purpose of defrauding these intervenors and other credi-

tors of the Laurens Lumber Company, and that the attempted transfer and seizure of the property was unauthorized by law, and the intervenors prayed that the same be annulled and set aside, so far at least as it interfered with their rights. They further alleged that a considerable proportion of the property seized by the receiver in this case was not the property of the Steele Lumber Company covered by the agreement between that company and the Laurens Lumber Company, of date May 6th, 1891, nor was it bought to supply the place of any used or consumed, but that it was the property to which the Laurens Lumber Company acquired absolute and unconditional title after the execution of said contract of May 6th, 1891, and in no manner subject to the terms and conditions of that contract, but that it was subject to the liens of these intervenors, as well as all other property placed in the hands of the receiver in this case; and they prayed that the property might be sold by the receiver and applied to the extinguishment of their claims and lien executions; in any event, they prayed that their liens be set up, established, enforced and protected by appropriate decree against all the property of the Laurens Lumber Company now in the hands of the receiver, and especially upon that levied on as aforesaid, and that such other and further relief be granted as was necessary and appropriate, the Laurens Lumber Company being alleged to be insolvent. It was alleged that their liens were superior to all others, and prayed that they be so decreed.

These intervening petitions were allowed, and the parties named were made parties plaintiff in the case. Upon the coming in of the answer, the court appointed a permanent receiver, and by the order of appointment, directed that the permanent receiver should take possession of all the property in the hands of the temporary receiver, except that originally sold by the A. B. Steele Lumber Company to the Laurens Lumber Company, and such property as was bought by the Laurens Lumber Company to supply the

place of any used or consumed; and as to such excepted property, it was ordered that the same be delivered to the Steele Lumber Company upon its executing a bond, to be approved by the court or ordinary, conditioned to pay the eventual condemnation money that may be found against the said *A. B. Steele Lumber Company on the final trial of said cause.* Under this order, a bond was executed by the Steele Lumber Company, and the property therein described delivered into the possession of that company. Thereafter certain of the property so delivered to the Steele Lumber Company was, under a subsequent order of the court, again taken possession of by the receiver.

After this had been done, the plaintiffs amended their petition, and, in substance, alleged that the Laurens Lumber Company had paid, on account of the purchase price of the property, to the Steele Lumber Company the sum of sixty thousand dollars, besides interest, under the contract of May 6th, 1891, of which property the Steele Lumber Company has repossessed itself as charged in the petition; and a judgment was prayed against the Steele Lumber Company for such sums.

Thereafter the Steele Lumber Company amended its answer and alleged, that for and on account of the purchase price of the property in question and because of other matters connected therewith and growing out of the same transaction, the Laurens Lumber Company was indebted to it in the sum of one hundred and five thousand dollars or other large sum, and, while it insisted that under the contract of October 15th, 1892, it was entitled to retain the property delivered to it in satisfaction of its said demand, that if the court, upon the final hearing, should be of the opinion that the transfer, for want of authority in the president to make it or for any other cause, was invalid, it would render a decree in its favor for the unpaid purchase money, giving it a lien thereon superior in point of dignity to that of any other creditor of the Laurens Lumber Company.

In this state of the pleadings, the whole matter was referred to a master in chancery, with directions to report to the court his findings upon all the issues of fact and law which were made by the pleadings and arose under the evidence. His report was a very comprehensive one, covering a great many issues which it will not be necessary to consider, upon the view we take and shall hereafter express of the real issues in the case. He reported as matters of fact, amongst other things: (1) That the Laurens Lumber Company was indebted to the Steele Lumber Company on account of unpaid purchase money due for the property covered by the agreement of May 6th, 1891, the sum of $94,042.50, with interest from May 6th, 1891. (2) That the Laurens Lumber Company was not damaged in its business or otherwise by the Steele Lumber Company. (3) He reported finally adversely to the claim of the Laurens Lumber Company against the Steele Lumber Company, both as to the Steele Lumber Company and the sureties on its bond. Exception was taken to each of these findings. The chancellor, upon review of these exceptions, sustained the master as to the first and second of the findings above enumerated, except that as to the first, he fixed interest on the principal amount of purchase money remaining unpaid as running from March 30th, 1891, instead of from May 6th, 1891, as found by the master; and as to the third finding, the chancellor overruled the master, and awarded judgment generally in favor of the Laurens Lumber Company against the Steele Lumber Company as principal, and A. B. Steele, John C. Kirkpatrick and W. N. Leitch as sureties on the bond, and each and all of them, in the sum of $39,118.50, besides interest and cost, for the use of the creditors and stockholders of the Laurens Lumber Company, parties to this proceeding, etc.

The master found that the taking possession of the property by the Steele Lumber Company was in good faith. The chancellor found that it was wrongful and tortious,

and in consequence of this latter finding, decreed that the balance due to the Steele Lumber Company on the purchase money by the Laurens Lumber Company, amounting to $94,642.50, ·was discharged by the re-entry of the Steele Lumber Company, and decreed that the Steele Lumber Company was liable to repay to the Laurens Lumber Company the amount of purchase money that had been theretofore paid, that is to say the sum of $55,357.50, with interest, less the reasonable rental of the property during the time it was in the possession of the Laurens Lumber Company. An examination of the report will show that the conclusion the chancellor ultimately reached as to the liability of the Steele Lumber Company and its sureties was predicated upon the finding last above referred to. The master did not report, nor does the decree of the chancellor fix, the value of the property delivered by the receiver to the Steele Lumber Company and ultimately left in its possession under the bond executed by the Steele Lumber Company for that purpose.

1. The question of practice dealt with in the first headnote is sufficiently treated in *Carey* v. *Giles,* 10 *Ga.* 1; *McNulty et al.* v. *Pruden,* 62 *Ga.* 138, and the cases there cited.

2-5. To a proper adjudication of the questions which arise in this case, it is essential first that we clearly comprehend the issues as they are defined by the pleadings filed on the part of the respective parties. If these issues be clearly understood and the rules of law applicable be properly administered, the court is bound to reach a correct result; but if the issues be misapprehended, and the cause tried upon theories inconsistent with those outlined in the pleadings, a correct result is necessarily unattainable. We will proceed therefore to ascertain from the pleadings what are the mutual contentions between the parties. The case was tried in the court below upon the supposition that it was a creditors' bill, and in its trial all of those remedial

processes ordinarily employed in such cases were applied. We do not think that the petition filed was a creditors' bill, or that it embodied any of the features of such a proceeding, and in treating the questions involved, we will first undertake to state what the petition is not, before we undertake to define what it is, because if it be determined that it is not a creditors' bill or a bill in the nature of a creditors' bill, to marshal the assets of the Laurens Lumber Company, we will be relieved of much embarrassment in dealing with collateral matters which have been engrafted upon this case upon the supposition that such was the nature of the proceeding.

It will be seen by an examination of the petition that the only parties plaintiff at the time it was originally filed, were the Laurens Lumber Company itself, and two of the stockholders of that company, who sued in their capacity as stockholders, one of such stockholders alleging that he was a creditor of the Laurens Lumber Company. The expressed purpose of the bill was to marshal the assets.of the Laurens Lumber Company. Another declared purpose was to set aside an alleged fraudulent conveyance made by the president of the Laurens Lumber Company to the Steele Lumber Company, under and by virtue of which the property was transferred from the possession of the Laurens Lumber Company to that of the Steele Lumber Company. Another professed object of the suit was to recover damages from the Steele Lumber Company for this alleged illegal conversion of the property of the Laurens Lumber Company.

Could this suit be maintained as a creditors' bill by those parties who were plaintiffs in the original record? It will not be pretended that the petition in the present case can be upheld as a proceeding under the provisions of our code relating to receivers for the assets of insolvent traders (see Code, §3149 (a) et seq.), first, because the Laurens Lumber Company could not maintain such a proceeding against

itself; second, to such a proceeding the Laurens Lumber Company would have been an indispensable party defendant; third, the stockholders, in their capacity as stockholders, are not entitled by the terms of the act to maintain such a proceeding; fourth, the individual stockholder, in his capacity as a creditor, neither alleges that the Laurens Lumber Company was at the time of the filing of the bill engaged in business within the terms of that act, nor does he allege its insolvency; nor does he allege that he himself is the owner of a sufficient proportion of its indebtedness to authorize him to file the petition; nor does he make the Laurens Lumber Company a party defendant to this proceeding. It cannot be treated as a general creditors' bill, because the right to file such bills, under section 3148 of the code, is limited by its terms to creditors, and by repeated adjudications of this court such right is limited to a class of creditors within which the alleged creditor who files this petition does not fall. He does not allege that he was a creditor by judgment, or a creditor holding any lien by contract or otherwise upon the property of his alleged debtor; nor does he make the alleged debtor a party defendant to this proceeding. Code, §3148; Gluck & Becker on Receivers, §25.

It cannot be treated as a bill to wind up the affairs of this corporation, in which all persons at interest are authorized to intervene: (1) Because to such a proceeding, by whomsoever it may be filed, the corporation itself must be made a party defendant. Thompson's Commentaries on the Law of Corporations, vol. 5, §6568; vol. 3, §3509; Coleman v. White, 80 American Decisions, 797; Ferris v. Strong, Edwards Ch. Repts. vol. 3, p. 127; Verplanck v. Mercantile Ins. Co. of N. Y., 2 Paige C. R. 438. (2) The petition could not be maintained as such a proceeding filed upon the part of the individual stockholder, because he alleges no action or threatened action of the directors which is beyond the authority conferred by the charter or the law under

which the company was organized, or such a fraudulent transaction completed or threatened by them, either among themselves or with some other party or with shareholders as will result in serious injury to the company or the complaining shareholders, or that the directors or a majority of them are acting for their own interest in a manner destructive of the company or of the rights of other shareholders, or that the majority of the stockholders are oppressively and illegally pursuing, in the name of the company, a course in violation of the rights of other shareholders, which can only be restrained by a court of equity; nor does it appear that he made an effort to obtain redress at the hands of the directors and shareholders of the corporation. He makes no complaint of any illegal action upon the part of the Laurens Lumber Company, the corporation of which he is a stockholder. He prays for no relief against that company; and the general rule of law is, that for wrongs suffered by the corporate interests, the right of action is in the corporation, and an action for such wrongs cannot be maintained by the stockholder, however injuriously it may affect him, unless he alleges such fraud upon the part of the corporation and complicity in the alleged wrongs as would seriously affect his interest, and in such a case it is indispensable that he make both the alleged wrong-doer and the corporation, through its board of directors, parties defendant to such a proceeding. Nothing of that kind appears in this case. For a full discussion of this subject, reference is made to the very able and learned opinion delivered by the present Chief Justice in the case of *Alexander, trustee, et al. v. Searcy et al.*, 81 *Ga.* 536. (3) It may with confidence be broadly stated that a corporation cannot as a party plaintiff file a petition in equity to marshal its own assets. A receiver for this purpose might be appointed at the instance of a creditor, but not at the instance of the insolvent debtor himself. Taylor on Corporations, §432; 5 Thompson's Commentaries on the Law of Corporations, §6843;

McIlhenny and Union Trust Company *v.* Binz, 26 American State Reports, 705; Kimball *v.* Goodburn, 32 Mich. 10; Hugh *v.* McRae, Chase's Decisions, U. S. 466. In the case last cited, the questions made arose upon this state of facts: The defendants procured judgments in the State courts against the State Bank of South Carolina, and were proceeding to enforce them by execution and levy; whereupon the State Bank filed its bill in the circuit court of the United States, stating that it was insolvent, that the defendants were about to procure an equitable preference over its other creditors by means of the executions which they were enforcing; and prayed for an injunction to prohibit them from so doing, and asked the appointment of a receiver. The defendants demurred for want of equity, and pleaded to the jurisdiction, besides answering further; and Chief Justice Chase, presiding in the Circuit Court of the United States for the 4th Circuit, delivering the opinion of the court, pronounced as follows: "The court is not aware of any case which will warrant its assuming the administration of the estate of a debtor simply upon the ground of insolvency. If such a case could be found, the court would be called upon to administer every estate where the debtor found himself unable to administer it himself conveniently. A creditor in a proper case might come into a court of equity for the appointment of a receiver, but a debtor could not. This therefore is not such a case as calls for the interposition of the court, and the prayer of the bill cannot be granted." This case seems to have been accepted as a leading one, and to have been made the basis of similar opinions in all the succeeding cases which have arisen, and with rare exceptions, to have been concurred in and followed. The exceptions to the rule are stated by Thompson in his Commentaries on the Law of Corporations, vol. 5, §6843, where, after stating the general rule to be: "We are aware of no cases where a corporation in its corporate capacity and name can apply to be put in the custody of a

receiver," he proceeds to note the cases in which a different conclusion was reached; and his criticism, after a statement of the general proposition, upon these decisions is as follows: "It remained for a court of the United States to set the precedent that a corporation can bring a suit in equity against its mortgage creditors, setting up the equity that it is unable to pay them and is about to default in making a payment to them; that it has a collection of property which ought to be kept together and operated as a unit, and that for this purpose a receiver ought to be appointed to hold its creditors at arm's length; and for the court, upon such a bill, to appoint a receiver upon the *ex parte* application of the corporation, and afterwards to refuse to transfer the receivership to a cross-action brought by the mortgage creditors." The cases thus criticised are the Wabash etc. R. R. *v.* Central Trust Co., 22 Fed. Rep. 272, and Central Trust Co. *v.* Wabash etc. Ry., 23 Fed. Rep. 863. In neither of these cases was the question really decided contrary to the proposition above announced. In the first case, the Circuit Court of the United States, upon the application of the debtor, merely took jurisdiction of the cause and granted the relief. The second case was in the nature of an intervention or cross-bill filed by the defendant, the trust company, in which the prayer was that the receiver be appointed for it. The court held that when the receiver was appointed he was appointed for all concerned, and therefore declined to make a change in the order of appointment. But no question ever arose either in that court or upon the appeal in the Supreme Court of the United States, to which the case afterwards went, that the court had no power upon the application of the debtor to appoint a receiver to take charge of his property. The question upon the exercise of the power went by default. The receivership was accepted without objection. The objection was to the personnel of the receiver. So that it cannot be said that these cases are authority against the

proposition above announced. For an elaborate discussion of these cases in their relation to the general subject, we refer to the case of the State, upon the relation of Merriam, petitioner, *v.* Ross, judge, *et al.,* 122 Mo. 435.

It will be seen, then, that upon authority of these decisions, the Laurens Lumber Company, the debtor corporation, could not maintain a bill to marshal its own assets.

We will not pause to inquire whether the court, upon the state of facts presented in this petition, was authorized either to grant an injunction or to appoint a receiver. There being no objection made to its action with respect to these matters, we will treat the petition, as we will hereafter consider it, as sufficient to sustain the appointment of a receiver. The petition in this case was filed by the Laurens Lumber Company as one of the parties plaintiff. It alleged a fraudulent conversion by the Steele Lumber Company of a large proportion of its effects. It alleged that the agreement under and by which the Steele Lumber Company obtained possession of such effects was fraudulent. It claimed damages against the Steele Lumber Company as for a conversion of its property, and prayed for general relief. Under this prayer, a restoration of the property might have been made to the Laurens Lumber Company. The agreement under which the Steele Lumber Company held it could have been declared void. Damages could have been awarded for the conversion, and the suit, while not maintainable as a creditors' bill, might still have been retained for the purposes above indicated. While the two persons who appear in the capacity of stockholders were not proper parties to this suit, inasmuch as the Laurens Lumber Company, under the view above taken, was a proper plaintiff, the two former may be considered as stricken, and the cause proceed for the adjustment of the equities existing between the Laurens Lumber Company and the Steele Lumber Company.

6. This was a species of equitable action of trover and

ejectment. Its main purpose could have been accomplished as well by a common law action for the recovery of the property, and, but for the incidental purposes sought to be accomplished, there was no warrant for resort to equity or for the appointment of a receiver. The only parties who in this kind of proceeding could properly litigate touching this question were at issue upon the original petition. Between the only defendant against whom substantial relief was prayed, the Steele Lumber Company, and those outside creditors of the Laurens Lumber Company who were joined as defendants in the original suit and as well those who were afterwards admitted by separate petition as parties plaintiff, there was no relation arising either from contract or tort. The Steele Lumber Company had no contract with them and owed them no duty for the breach of which an action would lie on their behalf, and there was therefore, according to the pleadings, no legal predicate for a money judgment in their favor against it. If it had appropriated property to its own use upon which they had or could set up a lien, it was the property of the Laurens Lumber Company, and the right to recover the property was in that company and not in them. Inasmuch as this proceeding was not a creditors' bill filed by creditors against their debtor, the Laurens Lumber Company, but was a suit by their debtor against a stranger to them, there was no theory upon which they could be admitted as parties plaintiff to that case. There was no case pending to which they could legally be made parties by amendment. There was nothing to amend by. There was no parent stem upon which they could engraft an amendment which would allow them to litigate in that case, and a decree against the Steele Lumber Company in their favor for any sum of money whatever was wholly unsupported by the pleadings. Their rights were antagonistic both to the Steele Lumber Company and the Laurens Lumber Company. They had a right to and did file petitions *pro interesse suo*, claiming liens upon the

property being administered by the court, and upon the allegations of these petitions, with appropriate prayers, making both the Steele Lumber Company and the Laurens Lumber Company parties defendant, the court, in disposing of the fruits of the litigation in the main case, could upon such petitions have made such special decrees in their favor against the Steele Lumber Company as would serve to attach their liens to any property in the hands of the latter which might be subject to such liens, to the extent of their recovery against the Laurens Lumber Company; but in no view of the case could a money judgment be rendered against the Steele Lumber Company in their favor.

In respect to their right to recover a judgment over against the Steele Lumber Company in the present case, the lien creditors, whose executions were enjoined under the original bill, occupy no better position than those other creditors who came in by separate petition. The only purpose for which they were brought into the original proceeding by the Laurens Lumber Company, was to enjoin them from the enforcement of their executions against the property of that company; and whether the Laurens Lumber Company could maintain such a bill or not, the mere grant of an injunction as against them did not authorize the court to retain them, and in their favor decree affirmative relief over against the Steele Lumber Company, their codefendant, between which and themselves no privity was alleged to exist. If they are entitled to such affirmative relief, it is under the separate petition filed by them, and not by virtue of any supposed inherent right springing from their position as defendants. The general rule that where a court of equity has all the parties before it, it will proceed to administer full relief, must be understood of course with the qualification that the parties must be proper parties, with such privities existing as will in law make one answerable over as against the other. They must be before the court upon proper pleadings, and the relief sought must not

only be appropriate to the pleadings, but such as could be legally granted upon the cause of action stated therein as between the parties thereto. A misjoinder of parties defendant by the Laurens Lumber Company establishes no privity between the parties themselves thus improperly joined. If the Laurens Lumber Company had a cause of action against the Steele Lumber Company, and another against the lien creditors, such causes of action, even though they in some way involved the same property, were wholly separate and distinct, and the only theory upon which these parties defendant, who had no interest in common, could be drawn into the litigation, must have been through the instrumentality of a creditors' bill, and such a proceeding, as we have already seen, could not be instituted by the Laurens Lumber Company itself. There was neither a community of interest nor a community of right between the Laurens Lumber Company and its creditors, and if the agreement sought to be set aside was in fact illegal as between the Laurens Lumber Company and the Steele Lumber Company, in the proceeding instituted the only parties necessary to determine that question were already before the court, and the admission of strangers to the contract as parties complainant was wholly without warrant or authority of law. Even though they were admitted without objection, no money judgment against the Steele Lumber Company can be decreed in their favor. If the property of the Laurens Lumber Company had been illegally seized by the Steele Lumber Company, or the contract under which the Steele Lumber Company obtained possession thereof was illegal and not binding, a suit either to recover the property or to set aside the agreement, to which the Laurens Lumber Company was a party plaintiff, could only be maintained by the Laurens Lumber Company, and the creditors of the Laurens Lumber Company would not be even proper parties to such a proceeding. If the creditors themselves desired to assail the contract upon the ground

that as between the Laurens Lumber Company and the Steele Lumber Company it was collusive and fraudulent and was for that reason prejudicial to their interest, then both the Laurens Lumber Company and the Steele Lumber Company were indispensable parties defendant. The two causes would be wholly dissimilar, and there is no possible theory upon which one could be engrafted as an amendment upon the other. But the right of such creditors, if they have a cause of action at all and seek any relief in the premises, must be asserted by means of petitions as before indicated. If they held liens against the property of the Laurens Lumber Company which had been seized by the Steele Lumber Company, and they desired to subject that property to the payment of their claims, or to recover over against the Steele Lumber Company for a wrongful appropriation of that property and a consequent loss of their liens, they must have made that question in the manner above pointed out, and are not entitled to have a decree made on that question under the original petition filed in the present case, which latter petition could involve nothing beyond a settlement of accounts as between their debtor and an alleged creditor of their debtor.

Whether or not, even though these lien creditors were admitted into this proceeding without objection, they can be retained and relief decreed to the extent of establishing their claims and liens as against the Laurens Lumber Company, it is not necessary to inquire, inasmuch as that company has not excepted to the rendition of a decree setting up and establishing as against it those claims and liens. Certainly, as against the Steele Lumber Company, they have no standing in this proceeding, except in so far as the court may be able to decree over in their favor upon the petitions *pro interesse suo*, for the purpose of fixing any lien established in their favor upon property in the possession of the Steele Lumber Company, which may hereafter be adjudged subject thereto as the property of the Laurens Lumber Company.

7. It appears from the record, that upon the coming in of the answer filed to this petition by the defendant, the Steele Lumber Company, the court appointed a receiver to take charge of the property, but upon the application of the defendant, the court directed the receiver to deliver into the hands of the Steele Lumber Company the property covered by the original agreement hereinbefore set out, and such other property in the hands of the receiver as was bought by the Laurens Lumber Company to replace that used or consumed by the latter company during the time the plant was in its possession; requiring, however, as a condition precedent to the delivery of such property to the Steele Lumber Company, that it should give bond and security for the eventual condemnation money, and requiring that the bond be given in such form as that judgment might be entered thereon as in case of appeals. Such a bond was accordingly given, by which the Steele Lumber Company as principal, and certain sureties therein named, became bound unto the chancellor and his successors in office for such sums "as may be recovered against said A. B. Steele Lumber Company in the case of the Laurens Lumber Company *et al. v.* A. B. Steele Lumber Company *et al.*, now pending in the superior court of said county." It will be observed that the bond given was not conditioned to pay the eventual condemnation money upon collateral issues which might arise upon petitions *pro interesse suo* filed by persons who were strangers to the original cause of action, but was conditioned to pay any judgment recovered against the Steele Lumber Company in the case of Laurens Lumber Company *et al. v.* A. B. Steele Lumber Company *et al.* Of course the parties liable upon the bond would be answerable for any judgment rendered upon an amendment germane to the original cause of action and which could be appropriately made to that suit. But where the equities arise in favor of strangers, whose right to litigate does not inhere in the nature and frame of the original petition, but

springs out of collateral matters which can only be engrafted
upon the original suit by an independent petition, the lia-
bility of the sureties could not be extended to include judg-
ments rendered upon such petitions.    Their liability in the
language of the code is one of strict law, and they cannot
be held beyond the strict limit of their liability as defined
by their contract.    That the bond given was not intended
to extend to liabilities beyond those alleged in the original
petition, is manifest when we come to read the order of the
chancellor under which the bond was required to be given.
The condition of liability, as prescribed by the order, was
that the bond should be given "conditioned to pay the
eventual condemnation money that may be found against
A. B. Steele Lumber Company on the final trial of said
cause."    There could never have been any final condemna-
tion money recovered by any person or party, either to the
original suit or the interventions, except by the Laurens
Lumber Company.    No decree could have been rendered
against the Steele Lumber Company for any sum of money
in favor of the creditors of the Laurens Lumber Company.
The only decree possible in their favor for a money judg-
ment would have been against the Laurens Lumber Com-
pany, and the only decree in their favor against the Steele
Lumber Company which could possibly have been rendered
was one subjecting to the payment of their debts property
in the hands of the Steele Lumber Company.    So that

under no view of the pleadings in this case can the creditors
of the Laurens Lumber Company recover, as against the
sureties on this bond, any sums for which a judgment may
be rendered in their favor against the Laurens Lumber
Company, unless there is a recovery in the original cause
of action by the Laurens Lumber Company as against the
Steele Lumber Company; and in that event, the recovery
would not be by these creditors in their own right, but
would be by the Laurens Lumber Company in its right,
and for the use of such of the creditors of the Laurens

Lumber Company as might thereafter establish their equitable right to the same.   Neither such sums, nor a decree that the property in the hands of the Steele Lumber Company is subject to the payment of these debts, is eventual condemnation money recovered against the Steele Lumber Company, within the meaning of that term as employed in the condition of the bond.   The bond then being given to secure only the judgment which may be rendered in favor of the Laurens Lumber Company against the Steele Lumber Company, the adjustment of the equities between these two companies must be made upon the lines laid down in the frame of the original petition, and we will now proceed to inquire whether the Steele Lumber Company is indebted to the Laurens Lumber Company.   We will remark, however, before passing from this subject, that if the bond had been conditioned for the forthcoming of the property to answer the final decree, the lien of the creditors, if established, would have been protected as well as the money judgment recovered.

8. Subsequently to the filing of the bond by the Steele Lumber Company, the Laurens Lumber Company amended its petition and prayed a judgment against the Steele Lumber Company for the purchase money paid by the former in the first instance, and it was upon the strength of this amendment that a judgment was ultimately rendered against the Steele Lumber Company and its sureties upon the bond above referred to, of which judgment the Steele Lumber Company now complains.   The amendment in question seems to have been allowed without objection. But the question is, whether, so allowed, it can be made the basis of a decree.   In determining this matter, it will be necessary to inquire what was the exact status of affairs at the time of the institution of this suit, and whether or not, in view of its action in the premises, the Laurens Lumber Company is estopped to claim a repayment of the money

paid by it upon the purchase price of the property in question.

We think that the transaction between Steele and Nace, the latter being the president of the Laurens Lumber Company, as disclosed by and outlined in the evidence, was a *bona fide* effort to compromise an existing indebtedness due from the Laurens Lumber Company to the Steele Lumber Company, the overwhelming weight of the testimony upon that point being to that effect, and there being nothing to the contrary, save only the isolated fact that it was done without authority from the board of directors of the Laurens Lumber Company; and this, even if rendering the contract of no effect, would not of itself taint the transaction with fraud; it was, at worst, only an ineffectual effort to compromise, and could not *per se* subject the Steele Lumber Company to the consequences enforced by the decree, that is to say, an entire forfeiture of its unpaid purchase money. It might amount to a tort for which damages may be recovered, but we know of no law which authorizes a court to subject it to a forfeiture of purchase money as a fixed penalty for its wrong. Against a suit for the tort and conversion, it might be still authorized to set off the unpaid purchase money.

9, 10. In dealing with this question, however, we will, for the purposes of this discussion, assume that the Steele Lumber Company, under a supposed but mistaken right of entry under its reservation of title in the agreement with the Laurens Lumber Company, in fact re-entered and took possession of this property without authority; that the agreement between its president and Nace was wholly unauthorized. In this condition of affairs, the Laurens Lumber Company would have its election of two rights. The one right would be to affirm the contract, ratify the unauthorized act of Nace, and hold the Steele Lumber Company to its agreement. Or it would have the right to repudiate *in toto* that agreement, and stand upon its rights measured

by the law. In the present case the Laurens Lumber Company elected to repudiate the act of Nace, and having made this election, it had the further election between two rights. One of these rights was to bring an action against the Steele Lumber Company for the recovery of the property, with its value for hire, or damages for its retention. The other was the right to abandon the property to the Steele Lumber Company, and to demand restitution of, and to sue for, the purchase money previously paid, with interest. It could not demand that the property be seized and administered as its property, and at the same time demand repayment of its purchase money. In making its election between these two rights, the Laurens Lumber Company has elected to sue for the recovery of the property and damages. Its election in both of the instances above indicated is final; for it seems to be a well established rule, that if a party having the right to repudiate or affirm a transaction, affirms it, he cannot afterwards resort to his right of repudiation; and when it becomes necessary to choose between inconsistent rights, the election will be final; and some of the courts hold that such an election cannot be reconsidered even where no injury has been done by the choice, or would result from setting it aside. Herman on Estoppel, vol. 2, §1045; Bigelow on Estoppel, §673. Having chosen to sue the Steele Lumber Company as for a conversion of its property, the Laurens Lumber Company had its further election of remedies. It might have brought an ordinary common law action of trover for the personal property, and ejectment for the realty. Or it might have brought the proceeding which was in fact instituted in this case, which, as we have said before, is a species of equitable action of ejectment and trover, with a prayer for other and incidental equitable relief. Had it instituted an ordinary common law action, it might have maintained that action without first paying to the Steele Lumber Company the unpaid purchase money. Had it chosen to sue in equity for the recovery of possession

only, this also could have been allowed without paying or offering out of the property sued for to account for the purchase money. But where it chose to come into a court of equity and demand, not a restitution of possession only, but the appropriation of the property as its property, before it could obtain that relief it must offer to do equity; at all events, a court of equity, in decreeing such relief in its behalf, will impose such conditions as will do equity as between the parties, and in its final decree direct first the payment of the unpaid purchase money out of the proceeds of the property. To this proposition it is unnecessary to cite authority.

In the institution of the action now under consideration is to be found the evidence of an election on the part of the Laurens Lumber Company to claim the property as its own, with damages. This is the highest evidence of an election. Upon the faith of this election, it has procured the appointment of a receiver; it has procured the seizure of the property in controversy, which seizure resulted in bringing into this controversy the persons against whom, as sureties of the Steele Lumber Company, a judgment was rendered, and in all subsequent stages of the litigation thus inaugurated, it will be held to its election. It will not thereafter be allowed during the progress of the litigation to exercise a second election inconsistent with the first, and by amendment obtain a decree in its favor upon the force and strength of the second election. Having made its election of its right, the Laurens Lumber Company must abide by that. Having made its election of a forum, it is likewise bound by that.

11. The mere fact that the defendant in its answer in the nature of a cross-bill prayed a judgment against the plaintiff, the Laurens Lumber Company, for the amount of its unpaid purchase money, with interest, and, insisting upon the validity of the alleged unauthorized contract of the president of the Laurens Lumber Company, filed a

bond and obtained possession of the property which had been previously seized by the court through its receiver, did not in any manner affect the election made by the plaintiff in its petition. The plaintiff, the Laurens Lumber Company, was nevertheless bound by its election, and the defendant was entitled to have its unpaid purchase money discharged before the property could be legally adjudged to be that of the Laurens Lumber Company. The mere circumstance of giving the bond in no manner affected the right of the defendant, or the election of the plaintiff. If the bond was legal, it merely stands in lieu of the property to guarantee the payment of the final judgment which might be rendered at the suit of the original plaintiffs in this case.

12. So that when we come to deal with the question as between the parties plaintiff and defendant to this record, that is the Laurens Lumber Company and the Steele Lumber Company, the court should give full expression to all of the equitable rights of both the parties and frame such a decree as will accomplish this result. Having elected to sue for this property as its own property for the purpose of paying its own creditors, the Laurens Lumber Company must first account to the Steele Lumber Company for the purchase money remaining unpaid, the latter company being held answerable for the value of all of the property of which it was permitted by the court to retain possession.

The only elements of damage laid in the original petition, for which a money decree could be rendered in this case against the Steele Lumber Company in favor of the Laurens Lumber Company, were: (1) damages which might have resulted to the latter to its business or property because of the alleged wrongful or unlawful entry of the Steele Lumber Company; and (2) damages as for a conversion, estimated upon the value of the property of the Laurens Lumber Company which passed into the possession of the Steele Lumber Company under its re-entry. The first of

these, as an element of damage, is eliminated by the findings both of the master and the chancellor. They both found that the Laurens Lumber Company was not damaged in its business or otherwise by the Steele Lumber Company, and this finding, as hereinafter qualified, is affirmed. The literal meaning of this finding is, that in consequence of the alleged unlawful act of the Steele Lumber Company the Laurens Lumber Company has suffered no injury, and if no injury, then no damages could be recovered. We think, however, a departure from the literalism of this finding is justified by the suggestions of the record itself, to the effect that when the chancellor made this finding, he did not have in view the liability of the Steele Lumber Company for the value of the property of the Laurens Lumber Company converted by the former, but employed the language with reference only to those incidental elements of damage otherwise laid in the petition.

If no damages could be found or awarded for the alleged illegal re-entry, then, inasmuch as it is not claimed that the receiver did not seize in the first instance and take charge of all the property of the Laurens Lumber Company of which the Steele Lumber Company possessed itself under its re-entry, the measure of the Laurens Lumber Company's right of recovery is the value of the property delivered by the receiver to the Steele Lumber Company, which was by it retained, and not including in this estimate the value of that property delivered by the receiver to the Steele Lumber Company in the first instance and afterwards retaken by the receiver.

As against the value of this property, the money due the Steele Lumber Company on account of the purchase money for the property in question, is found by the decree of the chancellor to be $94,642.50, with interest at seven per cent. from 30th day of March, 1891, and to this portion of the decree no exception is filed; and that finding is likewise affirmed.

The master does not report, nor does the decree of the . chancellor fix, the value of the property delivered to the Steele Lumber Company under the bond executed in this case and ultimately left in its possession, upon which bond the final decree is made.   It is necessary to ascertain the value of this property at that time, because this would be the measure of the liability of the Steele Lumber Company and its sureties upon that bond; for inasmuch as the Laurens Lumber Company caused all the property, other than that which was delivered to the Steele Lumber Company, to be seized by the court through its receiver, and inasmuch as the chancellor has decreed no damages for the alleged unlawful conversion in the first instance, it would be manifestly inequitable to charge the Steele Lumber Company with a greater sum than the value of the property retained by it.   As we have hereinbefore explained, before the Laurens Lumber Company could recover at all against the Steele Lumber Company in this case, whether for the purpose of administering the property for the use of its creditors or otherwise, having come into a court of equity, it will be required first to account to the Steele Lumber Company for the amount of purchase money due.

If upon an accounting between these parties it should appear that the amount of the Steele Lumber Company's claim for purchase money exceeds the value of the property received by it from the receiver, it would be entitled to a judgment for the excess against the Laurens Lumber Company.   If the contrary should be true, and the value of the property received by the Steele Lumber Company be greater than the amount of its purchase money claim, the Laurens Lumber Company would be entitled to a judgment against the Steele Lumber Company and the sureties on its bond for the difference.   If the Steele Lumber Company, upon the equitable set-off, should recover a judgment, and there be assets in the hands of the receiver derived from the sale of the property of the Laurens Lumber Company,

which was either the property sold originally by the Steele Lumber Company to the Laurens Lumber Company, or which falls within the description of property bought to take the place of that used or consumed by the Laurens Lumber Company, a special lien might be decreed for such sum, upon the prayer of its answer in the nature of a cross-bill, provided the description of the property as contained in the agreement between the parties, the title to which was attempted to be reserved, was sufficiently definite to justify the creation of such lien.   Upon this question we do not deem it necessary now to declare.   In addition to the establishment of such lien, if allowed, it would be entitled to recover a general judgment against the Laurens Lumber Company for any sums which it may be found to have paid out and expended upon account and for the use of the Laurens Lumber Company.   If any of the sums so expended were for the discharge of other liens, as for the payment of taxes, then such sums should be allowed as a lien of the dignity of that discharge.

Whether or not, as against the claims of other persons claiming liens, the liens thus established in favor of the Steele Lumber Company shall prevail, cannot of course now be decided.   They will at all events be good as against the Laurens Lumber Company.

If it should develop that there are assets in the hands of the receiver belonging to the Laurens Lumber Company upon which other creditors claim liens, in the distribution of such assets any lien set up or established in favor of the Steele Lumber Company is open to contest by such creditors.   Or if it should appear that the Steele Lumber Company has any property in its possession upon which other creditors have or claim liens superior to its own, while not entitled to recover as against it and its sureties upon the bond, they may be able hereafter to recover as against the Steele Lumber Company.   This much to indicate how the accounting should be had between the Laurens Lumber

Company and the Steele Lumber Company, which, as we have endeavored to show, are the only parties whose rights can be litigated or determined in the original proceeding.

When we come to deal with the decree which was in fact rendered, we encounter less difficulty. The chancellor failed to take account of the election of the plaintiffs to sue for the property alleged to have been seized by the Steele Lumber Company as the property of the former, and, though having caused a seizure of this property as its own, permitted it to exercise with respect to the right of action a second election, and to recover as the measure of its right as against the Steele Lumber Company and its sureties the purchase money which it had paid to the Steele Lumber Company. The bond given by the Steele Lumber Company and its sureties was a bond to answer a judgment in one case upon one cause of action; the decree against them was upon an entirely different cause of action, and it therefore cannot be sustained.

Affirming, therefore, the decree of the chancellor in so far as it finds that the Laurens Lumber Company was not damaged in its business or otherwise by the re-entry of the Steele Lumber Company, and that the purchase money remaining unpaid and due by the Laurens Lumber Company to the Steele Lumber Company is $94,642.50, with interest at seven per cent. from the 30th day of March, 1891; and without in anywise ruling upon the claims and liens of creditors of the Laurens Lumber Company as they were allowed and set up and established as between themselves and as against the Laurens Lumber Company,—direction is given that in all other respects the decree be vacated, the judgment of the court reversed, and the cause rereferred to the master, with instructions to state an account as between the parties, and adjust their equities in accordance with the principles herein indicated.

*Judgment reversed, with direction.*