## BUSH *et al. v.* BONNER *et al.*

1. " The right to control the affairs of a corporation is vested by law in its stockholders—those whose pecuniary gain is dependent upon its successful management. The majority stockholders, or the majority of the directors, when directors are chosen to act on behalf of the stockholders, have the right to determine the business policy of the corporation, and the minority must submit to their judgment in such matters, when exercised in good faith and not involving acts ultra vires, or in breach of trust." *Bartow Lumber Co.* v. *Enwright*, 131 *Ga.* 329, 333 (62 S. E. 233) ; *Hand* v. *Dexter*, 41 *Ga.* 454; *Lamar* v. *Lanier House Co.*, 76 *Ga.* 640.

2. The petition in this case sets forth a suit by minority stockholders against a third party, and the corporation is necessarily joined, but the right to bring the suit is based upon the sole ground that the directors refuse to do so. No act ultra vires is alleged nor any fraud or collusion charged; and since in an action of this character it is essential to the right of minority stockholders to question the acts of directors or majority stockholders that the acts complained of be either ultra vires, illegal, or fraudulent, it was not error upon general demurrer to dismiss the petition.

No. 3317.    July 26, 1923.

Equitable petition. Before Judge Park. Jones superior court. June 5, 1922.

*Clement & Campbell,* for plaintiffs.

*Allen & Pottle* and *Willard W. Burgess,* contra.

RUSSELL, C. J.    T. S. Bush and others, as minority stockholders in the Bank of Gray, brought a suit against J. W. Bonner and the Bank of Gray, for the purpose of recovering certain funds alleged to be due to the Bank of Gray by J. W. Bonner. The petition alleged large liabilities on the part of Bonner to the bank, by reason of his negligent, wrongful, and unlawful conduct as cashier in allowing overdrafts and paying checks contrary to law, and in wrongfully and unlawfully permitting loans in excess of ten per cent. of the capital stock of said bank, without taking good collateral and ample security; and it was alleged that the majority of the directors of the bank had failed and refused to institute suit against Bonner to recover his indebtedness to the bank, or to take any steps whatever towards enforcing an accounting between Bonner and his bondsmen and the bank, as to the large amounts due by Bonner to the bank. It is further alleged in the petition, that the failure and refusal of the majority of the directors and of the stockholders to institute suit or to take any steps towards enforcing collection of the liabilities of Bonner to the bank threatens to result in serious loss to petitioners and other stockholders similarly situated; that the acts of Bonner in permitting overdrafts and in paying checks and overdrafts in violation of the law resulted in wrecking the bank; that in order for the bank to reopen it was necessary for the petitioners and other stockholders to pay $150 per share on the stock held by them; and that the failure and refusal of the majority of the directors of the bank to take proper action to recover the indebtedness of Bonner to the bank amounts to fraud and collusion on the part of the directors with

Bonner for the purpose of shielding him from his just liabilities to the bank.

J. W. Bonner and the Bank of Gray filed a general demurrer to the petition, which was sustained, and his honor Judge James B. Park dismissed the petition "on the ground that no legal cause for equitable·interference is set forth in said equitable petition." The plaintiffs except on the grounds that this judgment is contrary to law and the principles of justice and equity.

1. The only question presented for determination here is whether the petition set forth a cause of action which authorized the minority stockholders to bring this suit for the purpose of enforcing an accounting between Bonner and the Bank of Gray. It is not to be questioned that under the provisions of the banking law of the State of Georgia (Acts of 1919, p. 199, sec. 16) the bank can bring such a suit against Bonner. It is provided that "Any officer or employee of any bank, who shall permit any customer of the bank to overdraw his account, or who shall pay any check or draft the paying of which shall overdraw any account, unless the same shall be authorized by the board of directors or by a committee of such board authorized to act, shall be personally and individually liable to such bank for the amount of such overdraft." This act expressly gives the Bank of Gray a right of action against J. W. Bonner for the sum of $31,993.27, the amount of overdrafts set forth in the petition; but the real question in this case is whether the allegations of the petition are sufficient to permit the petitioners, who are minority stockholders, to sue Bonner because the directors of the bank have refused to sue him. Ordinarily the business of a corporation is controlled and directed by its board of directors, and they determine when suits shall be brought or defended in the name of the corporation. *Hand* v. *Dexter*, 41 *Ga.* 454. Ordinarily the affairs of a corporation are managed exclusively by a majority of the stockholders represented by a majority of the directors. Section 2224 of the Civil Code makes provision for those exceptional instances where minority stockholders may take action for the protection and preservation of their interest in the corporation; and the proceedings and petition now under consideration must be held to be based upon the provisions of that section. It is as follows: "A minority stockholder may proceed in equity in behalf of himself and other stockholders

for fraud, or acts ultra vires, against a corporation, its officers and those participating therein, when he and they are injured thereby. But there must be shown — 1. Some action or threatened action of the directors beyond the charter powers; or, 2. Such a fraudulent transaction, completed or threatened, among themselves or shareholders or others, as will result in serious injury to the company or other shareholders; or, 3. That a majority of the directors are acting in their own interest or in a manner destructive of the company, or of the rights of the other shareholders; or, 4. That the majority stockholders are oppressively and illegally pursuing, in the name of the corporation, a course in violation of the rights of the shareholders, which can only be restrained by a court of equity; and it must also appear — 5. That petitioner has acted promptly; that he made an earnest effort to obtain redress at the hands of the directors and stockholders, or why it could not be done, or it was not reasonable to require it. 6. The petitioner must show that he was a shareholder at the time of the transaction of which he complains, or that his shares have devolved on him since by operation of law."

It may be conceded that the petitioners in this case have acted promptly, and have made earnest efforts to obtain redress at the hands of the directors and stockholders for any fraud or acts ultra vires if any such have been committed; and so we shall confine our investigations to the inquiry as to whether the petition shows such a state of facts as will bring the case under any of the first four paragraphs of section 2224 of the Code. It is plain from a reading of the first paragraph that it provides for redress against acts of *commission*, and not acts of *omission*. The language used is " some act or threatened act of the directors beyond the charter powers." The gravamen of the charge as recited in the petition is not a wrongful act, but rather a failure to act,— a failure and refusal to sue Bonner. Consequently the petition does not fall within the terms of paragraph 1. In paragraph 2 it is provided that there must be shown " such a fraudulent transaction, completed or threatened, among themselves or shareholders or others, as will result in serious injury to the company or other shareholders." The petition does not state any fraudulent transaction between Bonner and the directors by which injury may result; but on the contrary it is more than once stated in the petition that

the wrongful acts of Bonner, by reason of which arose his liability to the bank, were all done without the knowledge or consent of the directors, it is not alleged that the failure of the directors to sue is due to any collusion between the directors of the bank and. Bonner, but on the contrary it appears from the petition that there was no collusion, nor is any fraudulent transaction between Bonner and the directors either completed or threatened.

The petitioners can not establish their right to bring the present suit by the provisions of the third paragraph of § 2224, because there is no statement in the petition which goes to show that the failure and refusal to sue Bonner will in any way inure to the benefit of the directors or enhance their interest, so as to be destructive to the rights of the shareholders or of the company. The mere fact that the majority have refused to sue Bonner would not apparently enhance the interest of any of the stockholders or of the majority of the directors as stockholders, so as to be destructive of the rights of other stockholders; and there is no statement in the petition which compels the conclusion that the failure of the directors to sue Bonner will destroy the bank. On the contrary it appears from the allegations of the petition that the bank resumed business after the payment by the stockholders of an assessment of $150 per share. The allegations of the petition do not sustain the proposition "that the majority stockholders are oppressively and illegally pursuing, in the name of the corporation, a course in violation of the rights of the shareholders," because from the reading of these allegations it is plain that the complaint as set forth is one of non-action, — the complaint that the majority are refusing to act at all, instead of pursuing the course desired by the petitioners and which the petitioners say should be pursued. Construing all of the allegations of the petition together, it does not appear that there has been such a violation of their duties by the directors and officers of the company as to demand that a court of equity intervene and that there be substituted the remedy and relief sought by the petitioners for the exercise by the directors of that discretion with which they are clothed by law. In the absence of any allegation as to any fraudulent agreement between Bonner and the directors of the bank from which collusion might be inferred, by means of which Bonner would be benefited and the bank injured by the failure of the

directors to sue, it must be inferred that the directors are exercising their discretion in good faith in a matter looking to the best interest of the bank and of the stockholders, and that there is some good and valid reason for their inaction. It is not infrequently true that a creditor will collect more upon a bad debt by abstaining from suit and nursing the debtor than he would by proceeding to judgment and forcing the debtor into bankruptcy, or by forcing all of the assets of the debtor to sale in a period of general financial distress. As said by Mr. Justice Beck in *Albright* v. *Fulton County Home Builders,* 151 *Ga.* 485 (107 S. E. 335): "While there are criticisms upon the conduct of the directors and majority stockholders, there is no specific charge made against them of fraud; and the mere suspension for a while of building or of purchasing and selling does not show such mismanagement on the part of the officers and directors of the corporation as to require the interference of a court of equity."

The provisions of paragraph 5 of section 2224 are to be construed in connection with the four preceding paragraphs of that section; but even though the petitioners have acted promptly and have made an earnest effort to obtain redress at the hands of the directors and stockholders, they must follow this by showing that the acts complained of fall within some one of paragraphs 1, 2, 3, or 4; for § 2223 declares that "so long as the majority stockholders confine themselves within the charter powers, a court of equity will require a strong case of mismanagement or fraud before it will interfere with the internal management of the affairs of a corporation." To meet this view of the case it is alleged in paragraph 18 of the petition that the failure and refusal of the majority of the directors of the bank to institute suit against Bonner and his surety to recover the amount for which he is legally liable, and the refusal to bring Bonner to an accounting with the bank for his liabilities, and the failure of the majority of the directors of the bank to take proper steps to protect the interest of said bank against the losses for which Bonner is liable, amount to a fraud and collusion on the part of the directors; and in paragraph 20 it is alleged that unless Bonner is held accountable for the losses caused by his negligence and misdeeds the petitioners will suffer an irretrievable loss. Under our construction of section 2224, as well as the previous rulings of this court, we do not think

that the mere failure and refusal to sue, although the acts of
Bonner may have resulted in loss, amount to fraud and collusion;
and we are also of the opinion that the allegations of paragraph 20
that the loss will be irretrievable amount to a mere conclusion of
the pleader, because it does not follow from a mere statement that
the directors of the bank have not so far brought suit, without
additional allegations that the amount can not be collected as
well or more easily in the future than at the present time. There
is certainly no such allegation of facts in the present case as to
set forth fraud, and (allowing for the discretion with which the
directors of a corporation are clothed by law) the petition does
not show such " a strong case of mismanagement as so strongly.
calls for the interference of equity " that this court can say that
the trial judge abused his discretion by dismissing the petition
and declining to interfere with the management of the majority
of the stockholders and directors.

We have referred to the fact that the petition in the present case,
so far from charging collusion between Bonner and the directors,
expressly denies that the directors knew of Bonner's fraudulent
and unlawful acts; and for that reason the case of *Colquitt* v.
*Howard,* 11 *Ga.* 556, is not in point. See also *Steele Lumber Co.*
v. *Laurens Lumber Co.,* 98 *Ga.* 329 (5) (24 S. E. 755). The mere·
failure or refusal of the directors of a corporation to bring a suit
does not give the right to do so to minority stockholders. The
·wisdom and expediency of a suit by a corporation must be left
to the discretion of the directors. They may believe that a suit
would not be productive, or that a satisfactory settlement can be
secured, or that the publicity of a suit would be damaging to the
future interest of the corporation. As said in the *Albright* case,
supra, " they necessarily have a large discretion in that matter."
" In order for a minority stockholder to maintain an action of this
character, it is imperative that fraud and complicity on the part
of the directors must be shown. Even conversion of the property
of the corporation by a third person gives no right of action to
the stockholders, in the absence of an allegation of fraud or col-
lusion on the part of the directors." 2 Thompson on Corpo-
rations, §§ 4554, 4555. In the case at bar fraud and complicity
are negatived by the distinct allegation that the fraudulent and
wrongful acts of Bonner were unknown to the directors. " It is

well settled that minority stockholders can not question in judicial proceedings the acts of directors or majority stockholders, unless such acts are ultra vires, illegal, or fraudulent." 26 Am. & Eng. Enc. Law (2d ed.), 959, 970, and cit.

It follows that the learned trial judge did not err in sustaining the demurrer and dismissing the petition; and the judgment must therefore be

*Affirmed. All the Justices concur, except Hines, J., dissenting.*